# Vermont State Colleges Faculty Federation v. Vermont State Colleges

[566 A.2d 955]

No. 87-224

Present: Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed May 12, 1989

Motion for Reargument Denied August 24, 1989

*Michael T. Schein* of *Hoff, Wilson, Powell & Lang*, Burlington, for Plaintiff-Appellee.

*Paul K. Sutherland* of *Sutherland Associates*, Burlington, and *Nicholas DiGiovanni, Jr.* of *Morgan, Brown & Joy*, Boston, Massachusetts, for Defendant-Appellant.

**Allen, C.J.** The Vermont State Colleges (VSC) appeal from a decision of the Vermont Labor Relations Board (Board) approving the addition of certain adjunct faculty members employed by VSC to the existing bargaining unit of full-time faculty members and ranked librarians. Although we agree with the Board's conclusion that adjunct faculty who meet certain criteria are "state employees" within the meaning of the State Employees Labor Relations Act (SELRA), 3 V.S.A. § 901 et seq., we disagree with the inclusion of such employees in the same bargaining unit with full-time faculty members. The Board's decision is therefore affirmed in part and reversed in part.

The Vermont State Colleges Faculty Federation, AFT Local 3180 (Federation) filed a Petition for Election of Collective Bargaining Representative with the Board seeking an election to decide whether specific adjunct faculty members employed by VSC desired to join the full-time faculty unit already represented by the Federation.[1] After several hearings, the Board made the following findings, which are not contested on appeal.

Full-time faculty are hired by VSC through an appointment process involving review of applications and interviews by the dean and departmental committee of the college offering the position. Formal recommendations are then made to the president, who in turn makes the final hiring decision. Those full-time faculty hired receive a one-year contract, and their

---

[1] A bargaining unit comprised of full-time faculty and ranked librarians and covering the main campuses of Castleton State College, Johnson State College, Lyndon State College and Vermont Technical College has been under the representation of the Federation since 1973.

reappointment during the next three years is presumed unless written notice of nonreappointment is received by March 1 of the previous year. Before April 1 of the fourth year, faculty members receive notice either that their contract of employment will be renewed for an additional two years or that their fifth year of teaching will be their last. Consideration for tenure occurs in the sixth year of employment with a decision on eligibility for tenure being made by May 1 of that year.

Prior to reaching tenured status, a full-time faculty member undergoes a yearly evaluation in the areas of teaching effectiveness, scholarly and professional activity and service to college and community. The faculty member up for renewal, his peers and students and the administration all participate in the evaluation process. Once tenured, a faculty member is reviewed administratively only every five years.

Full-time faculty members have a variety of responsibilities including the requirement that they teach twenty-four credit hours per academic year. They are also assigned as formal advisors to students and must post and maintain reasonable office hours.

The compensation of a full-time faculty member is based upon a salary schedule and may vary depending on degrees received, extent of graduate work, academic rank and years of service. Full-time faculty members are also entitled to accidental death benefits, survivor's benefits, life insurance, long-term disability insurance, medical/dental coverage and a retirement policy.

To supplement its full-time faculty, VSC hires adjunct faculty members. These faculty members are used to teach certain specialty courses and additional sections of commonly offered courses. They are hired on a per semester basis and, on the average, teach only one or two courses a semester.

Each semester an adjunct teaches, he or she must sign a new contract of employment confirming his or her instructional assignment for the semester. Each contract provides, in effect, that employment with VSC is only temporary and does not bestow the same rights and benefits accompanying a regular faculty appointment. The college may discontinue any course along with the contract of the adjunct assigned to teach it if

an insufficient number of students enroll. Unlike full-time faculty, adjuncts are not automatically rehired for the next semester when no notification to the contrary is received.

The hiring process is less formal for adjuncts than full-time faculty members. It may involve only a phone call from the academic dean or department chair of the college filling the vacancy without any involved interview or screening.

Adjuncts are compensated according to a "system-wide trustee policy" allowing each college to pay somewhere in the range of $400 to $500 per credit hour taught. They receive no benefits other than this compensation for their services. Adjuncts are not eligible for promotion or tenure and receive no increased job security based on seniority.

Though adjuncts are required to confer with students regarding the subject matter which they teach, they are not required to keep office hours. Nor are they required "to publish, engage in research or perform any scholarly activity as a condition of employment." Also, there is no requirement that adjuncts assist with course registrations. Most adjuncts retain jobs in addition to their teaching positions. Some are even employed by VSC in full-time positions unrelated to teaching.

After several hearings, the Board determined that adjuncts who meet certain prerequisites qualify as "state employees" under 3 V.S.A. § 902(5) and are therefore subject to SELRA. The Board also determined that adjuncts and full-time faculty members share a sufficient community of interest to be included within the same bargaining unit. VSC challenges these determinations on appeal.

I.

VSC contends that it was error for the Board to conclude that those adjuncts with " 'a reasonable expectation of continued employment' " are limited status employees within the meaning of 3 V.S.A. § 902(5) and those with no such expectation are temporary and not subject to the provisions of SELRA.[2] According to VSC, the Legislature, while broadening the definition of state employee contained in 3 V.S.A. §

---

[2] It was undisputed before the Board that the words "limited-status" contained in 3 V.S.A. § 902(5) do not refer to temporary employees and that

902(5) to include individuals employed on a "limited status" basis, did not intend to bring all part-time employees within the definition.[3] VSC argues that by adding the words "or limited" to the definition while "leaving the phrase 'permanent part-time employee' intact, the Legislature *must* have intended to restrict the limited status addition to *full-time* employment only." VSC offers as an explanation for the amendment that "limited status" refers only to nontenured full-time faculty members.

█ The language of 3 V.S.A. § 902(5), however, suggests otherwise. Reading the statute as a whole, the words "including permanent part-time employees" intimate that such employees are only a part of a larger group of employees that may qualify as "state employees" within the meaning of the statute. The result would be different had the statute been amended to define "state employees" as "individuals employed on a permanent or limited status basis including *only those* part-time employees employed on a permanent basis." Section 902(5), as reasonably construed, does not preclude the characterization of part-time workers employed on a less than permanent basis as "state employees." See *In re A. C.*, 144 Vt. 37, 42, 470 A.2d 1191, 1194 (1984) (statutes are entitled to a reasonable construction).

VSC next challenges the Board's conclusion that adjuncts "who have a reasonable expectation of continued employment for at least a limited time period and have more than just a tenuous employment relationship" are employed on a limited status basis within the meaning of § 902(5).[4] According to VSC, the Board's conclusion is unsupported by the findings.

---

temporary employees are not otherwise "employees" within the meaning of SELRA.

[3] In 1977, 3 V.S.A. § 902(5) was amended to add the words "or limited" and now reads, in relevant part:

(5) "State employee" means any individual employed on a permanent or limited status basis by the state of Vermont, or Vermont state colleges, including permanent part-time employees, and an individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice ....

[4] The Board determined that adjuncts who meet the following four criteria have a sufficient expectation of continued employment to qualify as "state employees" under 3 V.S.A. § 902(5):

VSC argues that the findings instead support the conclusion that adjuncts are and remain temporary employees throughout their employment with the colleges.

In reviewing the Board's conclusion, this Court may "only ask whether the findings of fact taken as a whole justify the Board's ultimate conclusion." *In re Liquor Control Department Non-supervisory Employees*, 135 Vt. 623, 625, 383 A.2d 612, 613 (1978). If there is factual support for the Board's conclusion, we will leave it undisturbed.

Here, the Board found that there is much variance among adjuncts in the frequency of their employment. The Board also found that some "adjuncts teach one or more courses during one or both semesters of each academic year" and "[o]thers teach during one or more semesters for an academic year or years, do not teach for a year or years, [and] then resume teaching at some subsequent point." Although it is true that adjuncts are not presumed rehired for each subsequent semester they teach, as are full-time faculty, and that they receive a new contract for each semester of teaching, the Board, based on these findings, could infer that some adjuncts have a reasonable expectation of continued employment, whereas others are temporary.[5] Accordingly, the Board's conclusion will remain undisturbed.

VSC's reliance on *Keene State College Education Association, NHEA/NEA v. State*, 119 N.H. 1, 396 A.2d 1099 (1979), is misplaced. The definition of "public employee" contained in New Hampshire's Public Employee Labor Relations Act

---

(1) employed for at least three semesters, or who currently are in their third teaching semester,

(2) teach at least six credit hours per academic year,

(3) notwithstanding the first two requirements, adjuncts who have not taught during one academic year, past or present, meet the definition of limited status provided they otherwise regularly teach at least six credit hours per academic year and have been employed for at least three semesters, or who are currently in their third teaching semester; and

(4) are not otherwise employed by the Colleges in a full-time position as an administrator or manager.

[5] The Board essentially drew the line at three semesters of teaching. The Board determined that those adjuncts who have taught three or more semesters, assuming they satisfied the other criteria, are employed on a limited status basis whereas those who have taught less than three are only

(PELRA), NHRSA 273-A:1 et seq., expressly excludes "[p]ersons in a probationary or temporary status, or employed seasonally, irregularly or on call." NHRSA 273-A:1(IX)(d). The fact that full-time lecturers at Keene State College fall within this exception to the definition of "public employees" and are therefore not subject to the provisions of PELRA sheds little light on whether similarly situated employees, such as adjuncts, are "employed on a limited status basis" within the meaning of § 902(5).

## II.

VSC next contends that the Board erred by placing adjuncts in the same bargaining unit as full-time faculty members. The Board determined that adjuncts who qualify as "state employees" under § 902 share a sufficient community of interest with full-time faculty members to be included in the same bargaining unit. According to the Board, while the commitment of adjuncts "is not on par with the full-time faculty, their central function of furthering the education of students is generally the same."

Section 927 of Title 3 vests the Board with the power to determine unit composition for purposes of collective bargaining where state employees are involved. An employer need not recognize a bargaining unit or collective bargaining representative "until the board has determined the appropriate unit to be represented and has formally certified its determination." 3 V.S.A. § 941(b). Approval of a bargaining unit involves a finding by the Board "that the unit is appropriate, § 927(a), and that a majority of the employees have voted for organization of the proposed unit. § 941(e)." *In re VSEA, Inc.*, 143 Vt. 636, 640, 471 A.2d 230, 232 (1983) (citations omitted).

---

temporary employees. Where to draw the line was a matter within the Board's expertise, and we will not substitute our own judgment in place of the Board's. See *In re Personnel Designations of Managerial, Confidential & Supervisory Employees*, 139 Vt. 91, 94, 422 A.2d 932, 935 (1980) ("The statutory authority as well as the expertise of the Board must be recognized.").

In determining the suitability of a collective bargaining unit, the Board must consider the criteria set forth in 3 V.S.A. § 941(f).[6] VSC argues that the second criterion, requiring a community of interest for two groups to be included in the same bargaining unit, is not satisfied in this case and the Board therefore erred by including adjuncts and full-time faculty members in the same unit.

■ Before considering VSC's challenge, we take notice of the deferential standard of review required here. "Unit determinations are within the expertise of the Board and are presumed to be 'correct, valid and reasonable, with a clear and convincing showing required to overcome the presumption.' " *In re VSEA, Inc.*, 143 Vt. at 642, 471 A.2d at 234 (quoting *International Association of Firefighters Local #2287 v. City of Montpelier*, 133 Vt. 175, 178, 332 A.2d 795, 797 (1975)); see also *In re Vermont State Colleges Faculty Federation*, 138 Vt. 299, 301, 415 A.2d 226, 227 (1980). It is also true that " '[t]he bargaining unit approved by the Board need not be the *most* appropriate unit, only *an* appropriate unit.' " *In re VSEA, Inc.*, 143 Vt. at 642–43, 471 A.2d at 234 (quoting *NLRB v. Hudson River Aggregates, Inc.*, 639 F.2d 865, 871 (2d Cir. 1981)).

■ VSC points out a variety of ways in which the position of an adjunct differs from that of a full-time faculty member. Unlike full-time faculty members, adjuncts are ineligible for tenure and are paid on a per credit basis. They are not required to teach 24 credit hours a year, act as formal advisors

---

[6] These include:

    (1) The authority of governmental officials at the unit level to take positive action on matters subject to negotiation.

    (2) The similarity or divergence of the interests, needs, and general conditions of employment of the employees to be represented....

    (3) Whether over-fragmentation of units among state employees will result from certification to a degree which is likely to produce an adverse affect either on effective representation of state employees generally, or upon the efficient operation of state government.

to students or maintain reasonable office hours. The process for appointing adjuncts is much less formal than that involving full-time faculty members. Finally, adjuncts are not entitled to the same benefits associated with employment as are full-time faculty members. These differences demonstrate the lack of a "community of interest" shared by both groups and comprise a clear and convincing showing sufficient to overcome the presumption of validity afforded the Board's unit determination. To combine two groups with such divergent interests in the same unit would impede effective collective bargaining. *New York University*, 205 N.L.R.B. 4, 7–8 (1973); see also *University of Vermont & State Agricultural College*, 223 N.L.R.B. 423, 425 (1976); *University of San Francisco*, 207 N.L.R.B. 12, 13 (1973). It is not difficult to imagine, for instance, how issues of reimbursement and other job benefits for two distinct groups such as full-time faculty and adjuncts, when considered together, could lead to a confusion of the different employee groups' requests as well as unduly protracted bargaining. It was error for the Board to approve the inclusion of full-time faculty and adjuncts in the same collective bargaining unit.

*Affirmed in part, reversed in part.*

Peck, J., dissents without opinion.