**Grievance of VSEA, Tracey Barnard, et al.**

[666 A.2d 1182]

No. 94-603

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 22, 1995

*Samuel C. Palmisano*, VSEA Legal Counsel, Montpelier, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, and *David K. Herlihy*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Johnson, J.** Food service employees of the Vermont Criminal Justice Training Council (VCJTC) lost their positions when the food service function was contracted out. They appeal from an order of the Vermont Labor Relations Board (VLRB) dismissing their grievance. We affirm.

VCJTC operates the Vermont Police Academy in Pittsford, providing basic and advanced training to law enforcement officers and firefighters. Prior to 1993, its food service was operated by the state and staffed by public employees, who were hired and employed under the State Employees Labor Relations Act and the collective bargaining agreement (the contract) between the state and its employees.

In January 1993, VCJTC's executive director, Francis Aumand, advised a union representative and food service employees that layoffs might result from the contracting out of the food service function.

The relevant provision of the contract is Article 2, § 3, which states in part:

> No employee will be laid off or otherwise be removed from employment as a result of contracting out except in circumstances where the work is beyond the capacity of State employees, or that the work or program can be performed more economically under an outside contract, or that an outside contractor has management techniques, equipment or technology which will result in better public service and increased productivity. Prior to any such lay off or other job elimination under this paragraph the VSEA will be notified and given an opportunity to discuss alternatives. . . .
>
> When a State agency contemplates contracting out bargaining unit work and publishes a formal Request For Proposal, a concurrent notice of such publication will be sent to VSEA President or Executive Director and the Department of Personnel. Upon request, VSEA shall be permitted to inspect the RFP specifications.

Meetings between management and the union regarding the proposed layoffs were held on March 1, 1993 and June 11, 1993. At the first of these meetings, employees suggested the alternatives of laying off a law enforcement training coordinator and the possibility of part- or flex-time scheduling. At the June 11, 1993 meeting, the union and employees offered seven proposals, to each of which the State responded in writing on June 22, 1993. The affected food service employees were laid off on June 25, 1993.

Based on alleged violations of Article 2, § 3 of the contract, the union filed a grievance on behalf of the employees who had been laid off. After hearing and argument, a majority of the Board found that Article 2, § 3 had not been violated, concluding that savings had been reasonably contemplated by contracting out the food service. The Board further found that the union's major proposals for an alternative solution had been submitted at a meeting on June 11, 1993 and that these ideas were discussed and considered in good faith. One member of the Board dissented.

Central to the Board's decision was the majority's conclusion that the union had not set forth reasonable alternatives to contracting out. It stated:

> In examining the facts of this case in light of this mutual obligation, we are struck by the failure of VSEA and the involved employees to sufficiently respond to the impending layoffs from the time they were aware such layoffs were possible until they actually occurred.

The present appeal followed.

As we said in *Vermont State Colleges Faculty Fed'n v. Vermont State Colleges*, 152 Vt. 343, 566 A.2d 955 (1989), "In reviewing the Board's conclusion, this Court may 'only ask whether the findings of fact taken as a whole justify the Board's ultimate conclusion.'" *Id.* at 348, 566 A.2d at 958 (quoting *In re Liquor Control Dep't Non-supervisory Employees*, 135 Vt. 623, 625, 383 A.2d 612, 613 (1978)). If there is factual support for the Board's conclusion, this Court will leave it undisturbed. *Id.* Moreover, an interpretation of a collective bargaining agreement is within the expertise of the Board, and we review such interpretations with great deference to that expertise. *In re Baldwin*, 158 Vt. 644, 645, 604 A.2d 790, 791 (1992) (mem.).

Here, the grievants concede that representatives of the state met twice with affected employees and their representatives to discuss alternatives to the layoffs. The problem, according to grievants, was that the state representatives failed to work with them on developing proposals and did not provide them with constructive feedback.

The Board found to the contrary on this question, however, and its findings satisfy the standard of review set forth in *Vermont State Colleges Faculty Fed'n*. Grievants are correct that the Board found that employee representatives made two proposals at the March 1, 1993 meeting, but the Board found that each one was properly rejected. The Board was well within its discretion in noting that the

suggestion of laying off one of the two training coordinators was not a viable option, given that training was the primary Council mission. The second proposal — creating a flex-time or part-time schedule for employees — did not represent a consensus of the employees, according to their representative.

Grievants next argue that the Board itself concluded that Aumand was not "proactive" in developing alternatives to the layoffs of food service employees. Specifically, they contend that Aumand never calculated the amount of money that the state could have saved if it had created a part-time schedule for the employees and reduced their cumulative hours.

The argument implies that once an idea is offered by employees or the union, the task of determining its feasibility is that of management. The Board viewed the responsibility for developing alternatives as mutual, interpreting Article 2, § 3 as imposing duties on each party. It stated that "[t]he contractual provision that VSEA will be given an opportunity to discuss alternatives necessarily implies that VSEA, in seeking to avert a layoff, has an obligation to present *concrete alternatives* to the layoffs of employees. There is a mutual obligation to engage in good faith discussions to seek to avert the layoffs of employees." (Emphasis added.)

Grievants have not argued that the Board's reading of the contract was erroneous, but rather that Aumand should have offered some constructive feedback to their proposal of a part-time schedule. The State counters that the burden of proposing alternatives must be on the union if the process is to work because potential alternatives are likely to involve actions that are feasible if the employees voluntarily accept certain conditions, but not feasible if contested.

The question on appeal, however, is not who had the burden of advancing or detailing a given alternative idea, but rather whether there is factual support for the Board's conclusion. The Board found that VSEA and involved employees failed to advance timely and concrete proposals. The record supports that finding. Specifically, the Board found that the union knew, or should have known, by January of 1993 of the seriousness of the situation, but nevertheless failed to advance ideas in concrete form until the June meeting. The Board also found that the union "failed to present concrete alternatives sufficient to generate substantive discussion on averting the layoffs of employees."

Grievants argue that the state responded to the proposals advanced on June 11, 1993 only days before the layoffs actually

occurred. The Board's findings with respect to the union's own tardiness adequately address this argument. In addition, the Board found that "[t]he employer did a substantial amount of work after the June 11 meeting and prior to the layoffs of employees, with respect to the only proposal which [the union representative] and the employees made which could result in significant cost savings."

Finally, grievants contend that Council executive director Aumand unduly stressed a legislative, rather than a negotiated alternative to contracting out, urging grievants to seek to influence budget deliberations. There is no indication in the record that Aumand substituted his suggestion of a legislative solution for a good-faith search for an alternative to contracting out. Nor have grievants explained why including a lobbying effort as a possible answer was improper.

In sum, the Board properly concluded that the state met its obligations under the contract, and the conclusion of the majority is amply supported by the record.

*Affirmed.*