# In re Grievance of Kevin Scott

[779 A.2d 655]

No. 99-544

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed June 29, 2001

*David W. Stewart, Mark Heyman* and *Samuel C. Palmisano,* VSEA Counsel, Montpelier, for Appellant.

*William H. Sorrell,* Attorney General, and *William B. Reynolds,* Assistant Attorney General, Montpelier, for Appellee.

**Amestoy, C.J.** State trooper Kevin Scott appeals the Vermont Labor Relations Board's dismissal of his grievances challenging disciplinary actions imposed upon him for his failure to pass the Vermont State Police physical fitness examination. On appeal, Scott

claims that: 1) the Department of Public Safety's untimely investigation and notice procedures should result in the disciplinary actions being dropped; 2) the fitness policy discriminates against him because of his age and gender; and 3) mandatory physical fitness standards must be related to specific job requirements, and his job does not require the ability to run 1.5 miles within a specific time limit. We affirm.

Appellant was hired as a Vermont State Trooper in 1988 when he was 26 years old. At that time, he signed an employment agreement in which, as a condition of his employment, he agreed to maintain minimum physical fitness standards as established by his employer, the Department of Public Safety (the Department). The fitness requirements are also set forth in Article 51 of the collective bargaining agreement between the Vermont State Employees Association, Inc. (VSEA) State Police Bargaining Unit and the Department.

The goal of the Department's fitness program is to improve the overall health and physical fitness of the Department. It is also "the Department's philosophy that physical fitness is vital to satisfactory job performance." The fitness standards are based on those developed by the Cooper Institute for Aerobics Research, and measure overall physical fitness, rather than the ability to perform specific tasks. The minimum passing standard constitutes the fitness ability of the 50th percentile of the general population. Given that an estimated 85 percent of the population is fairly unfit, the standards are not considered difficult. The Vermont State Police conducted a study of the periods prior to (1982 — 1986) and after (1987 — 1991) the implementation of the mandatory fitness program. The study revealed a steady improvement of employees' fitness levels, and a decrease in the number of lost workdays due to workers' compensation claims. Other recognized benefits of cardiovascular fitness include: greater emotional stability, decreased absenteeism, decreased health problems, improved pulmonary function, decreased lower back pain and lower incidence of the common cold.

The state police mandatory fitness test takes place twice annually, and has six parts: a 1.5 mile run, a one-minute sit-ups test, a one-minute push-ups test, bench press, a sit-and-reach test and a body fat percentage test. Passing scores are established by age and gender, due to physiological differences between men and women, and the body's physical deterioration with age. For example, the minimum passing standards for the run are designed to hold men and women to the same level of fitness based on their aerobic capacity, though the

absolute time standards require men to run faster. Conversely, the absolute sit-and-reach standards are greater for women, because on average women are more physically flexible than men. Similarly, absolute standards are adjusted for age.

The passing times for the 1.5 mile run are: men (age 20-29) — 12:18 minutes; women (20-29) — 14:55 minutes; men (30-39) — 12:51 minutes; women (30-39) — 15:26 minutes; men (40-49) — 13:53 minutes; women (40-49) — 16:27 minutes. As an incentive to improve performance, officers are eligible to receive awards of personal leave or monetary payment in amounts specified in the State Police Bargaining Unit contract. An employee's repeated failure of any part of the physical fitness standard may lead to disciplinary action, including dismissal.

Appellant was successful in meeting all of the physical fitness standards from 1988 until 1996. Beginning in October 1996, when he was 34 years of age, appellant repeatedly failed the running requirement. In October 1996, appellant finished the 1.5 mile run in 16:00 minutes; the passing time for men aged 30-39 is 12:51 minutes. In April 1998, appellant took the spring physical fitness assessment, which counted as his first retest of his failure to pass the test in 1996. Appellant's time on the run was 14:44 minutes, which again failed to meet the standard.

In a memorandum, fitness coordinator Sgt. Robert Casey, who maintains responsibility for conducting all physical fitness testing for the state police, notified appellant of his failure to pass the test, and of the date of the second retest. Appellant also received a memo from Lt. James Dimmick, appellant's station commander, indicating the seri— ousness of the failure. The memo stated, "You can lose time over this matter and could . . . lose your job." The memo offered appellant "on the clock" time to "do some cardiovascular work." On July 15, 1998, appellant performed his second retest of the run, and was clocked at 14:29 minutes. In September 1998, appellant participated in the fall physical fitness assessment, which served as his third retest of the October 1996 failure, and the first retest of the spring 1998 failure. Appellant completed the run in 15:58 minutes, again failing to meet the standard.

In October 1998, in a memo to appellant, Sgt. Casey again informed him of his failure to pass the cardiovascular portion of the test, and advised him to prepare for the retest by beginning a cardiovascular workout program. The memo also offered assistance in formulating an individual exercise program. During the fall of 1998, appellant did not

take advantage of his employer's offers to train on work time, nor for assistance in formulating an individual exercise program. Appellant took the test again in December 1998, completing the run in 15:37 minutes.

The Department conducted internal affairs investigations into appellant's September and December 1998 failures (his third and fourth failed retests). Article 14 of the State Police Bargaining Unit contract which addresses disciplinary action states, "Non-criminal internal investigations should normally be completed within 30 work days, and notice of disposition should normally be given within 30 work days after completion of the investigation."

In November 1998, Sgt. Casey submitted an internal investigation report regarding appellant's failure to pass his third retest of the run in September 1998, which subsequently went out for a "chain-of-command review." The chain-of-command review was completed in 33 work days; appellant was notified of the disposition of the investigation, including "preferral of charges" against him, 31 work days later. The Department disciplined appellant with the loss of four days of annual leave.

In January 1999, Sgt. Casey submitted an internal affairs investigation report regarding appellant's failure of the fourth retest in December 1998. The investigation was completed in 13 work days. Appellant was notified 37 work days after its completion. As a result of the failure of this fourth retest, the Department suspended appellant for five days without pay.

Appellant appealed both disciplinary actions to the Vermont Labor Relations Board, alleging that: 1) the Department did not meet the requirements set forth in the contract which require it to complete investigations within 30 days, and therefore the disciplinary charges against him should be dismissed; and 2) the fitness standard impermissibly discriminated against him based on his age and gender.

The Board issued its decision in October 1999, dismissing both of appellant's grievances. The Board observed that the Department "demonstrated a disregard for negotiated contractual provisions" by failing to complete its first investigation within 30 work days, and by failing to notify appellant within 30 work days of the dispositions in both investigations. The Board declined, however, to sustain either grievance. It stated:

> We do not condone the Employer's actions in this regard, but we do not believe it would be appropriate to sustain these grievances based on the Employer's failures. Grievant has

not demonstrated any prejudice to him due to the Employer exceeding contractual timeliness by a small number of days. Absent demonstrated prejudice, we are not inclined to rescind Grievant's suspensions.

The Board also rejected appellant's claims that the physical fitness standards impermissibly discriminated against him on the basis of his age and gender. The Board found § 2000e-2(l) of the Civil Rights Act inapplicable to appellant's case as it prohibits, in the "selection or referral of applicants or candidates for employment or promotion," changing the standards of employment-related tests based on race, color or national origin. 42 U.S.C. § 2000e-2(l). The Board stated, "Grievant is not an applicant or candidate for employment or promotion."

Similarly, the Board rejected appellant's disparate impact claims because a "uniform facially neutral standard" was not involved. The Board noted that in the cases cited by appellant, "female complainants claimed an adverse impact on them because they had to complete a 1.5 mile run in the same time, 12 minutes, as males. In the case before us, on the other hand, Grievant contests the fact that he has to meet a different standard in the 1.5 mile run than female employees and older employees." The Board further found that appellant had failed to set forth a prima facie case of discrimination on which to base his claims. The Board stated:

> In order to do so, Grievant would have to demonstrate that the test in question — the application of the 1.5 mile run standards — causes a significant adverse impact upon males compared to females, or upon younger employees compared to older employees. He has not done so. The evidence does not establish that male troopers . . . had a higher percentage of test failures than woman [sic] troopers . . . . Grievant also has not presented evidence demonstrating that younger employees had a higher percentage of test failures than older employees.

On appeal, appellant claims that the Board's finding that the Department violated express terms of the contract requires it to sustain his grievances, and that the fitness policy impermissibly discriminates against him on the basis of his age and gender. Appellant also claims that mandatory physical fitness standards must be related to specific job requirements, and that the requirements of his job do

not necessitate the ability to run a specific distance within a specified time limit.

On review, the Labor Relations Board is entitled to substantial deference by this Court. "We will not reverse its conclusions where the findings of fact, taken as [a] whole, support them, nor disturb its findings unless they are clearly erroneous." *In re Butler,* 166 Vt. 423, 425, 697 A.2d 659, 661 (1997) (citations omitted). Because an interpretation of a collective bargaining agreement is within the expertise of the Board, we review such interpretations with deference. *In re VSEA,* 164 Vt. 214, 216, 666 A.2d 1182, 1183 (1995) (upholding Board's disparate treatment analysis).

Appellant first claims that the Board erred by dismissing both of his grievances despite finding that the Department violated the collective bargaining contract in three instances: failing to complete its first internal affairs investigation, and failing to notify appellant of the dispositions of both internal affairs investigations, within 30 work days.

Although the Board found that the Department did not meet the timelines set forth in Article 14, and that the Department failed to present persuasive evidence to excuse its failure to meet these guidelines, the Board did not conclude, as appellant asserts, that the Department violated the contract. There is no language in its decision which suggests otherwise. A close reading of Article 14 supports the absence of such a finding in the Board's decision.

Article 14 of the collective bargaining contract reads, in pertinent part,

> [d]isciplinary proceedings *shall be instituted within a reasonable time* after a violation of the Code of Conduct occurred or was discovered and disciplinary action *shall be taken within a reasonable* time after disciplinary charges have been proved or admitted. Non-criminal internal investigations *should normally* be completed within 30 work days, and notice of disposition *should normally* be given within 30 work days after completion of the investigation.

(Emphasis added.) The mandatory language in the first sentence of the selection above, "shall," requires that disciplinary proceedings and actions, generally, be done "within a reasonable time." The thirty day timelines, which appear in the second sentence, apply more specifically to noncriminal internal investigations and notices of dispositions. The language in the second sentence suggests that such investigations and notices of disposition "should normally" be completed in thirty days.

There is no mandatory language in reference to the thirty-day timelines. Rather, "30 days" appears to be a guideline for what constitutes "a reasonable time."

■ Ultimately, the Board decided not to rescind appellant's disciplinary suspensions on the basis of the Department's failure to meet the thirty-day timelines because appellant suffered no prejudice due to the delay of "a small number of days." In sum, the Board found no violation of contract provisions, nor any prejudice to appellant due to the Department's de minimus delay, and "[w]e will not reverse [the Board's] conclusions where the findings of fact, taken as [a] whole, support them." *Butler*, 166 Vt. at 425, 697 A.2d at 661.

Appellant next contends that the Department's physical fitness standards impermissibly discriminated against him. Appellant claims that the fitness requirements, which are based on age and gender, hold him to higher standards than female or older troopers who are required to perform the same job-related duties. Although appellant appeals the Board's conclusions that the standards were not discriminatory, he does not dispute the Board's findings of fact upon which its decision is based. Thus, we begin by noting that appellant challenges as discriminatory a test which the Board found to "hold males and females to *the same level of fitness* based on their aerobic capacity" and to similarly "hold older persons to *the same level of fitness* as younger persons based on their aerobic capacity." (Emphasis added.)

Appellant concedes that he is bound by findings of fact that the discrepancies in time standards for the 1.5 mile run accurately adjust for aerobic capacity measurements in determining troopers' cardiovascular fitness irrespective of age or gender. Yet, he claims to have clearly established a prima facie case of disparate treatment because he was held "to a higher standard than other employees, with respect to the 1.5 mile run, based solely on his age and gender." In assessing claims of discrimination based on disparate impact, we apply the burden-shifting analysis employed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *State v. Whitingham Sch. Bd.*, 138 Vt. 15, 19, 410 A.2d 996, 998-99 (1979); see also 42 U.S.C.A. § 2000e-2(k)(1)(A)(i) (requiring a complaining party to demonstrate that "a particular employment practice . . . causes a disparate impact"). Under this framework, a complainant demonstrates a rebuttable inference of employment discrimination, "by making out a prima facie case that (1) he was in the protected age [and gender] group; (2) he was qualified for the job; (3) he was denied the promotion [or job]; and (4) the circumstances permit an inference of age [or gender] discrimi-

nation." *Carpenter v. Central Vermont Med. Ctr.*, 170 Vt. 565, 566, 743 A.2d 592, 594-95 (1999) (mem.). The burden is a light one. *Hodgon v. Mt. Mansfield Co.*, 160 Vt. 150, 159, 624 A.2d 1122, 1127 (1992).

We agree with the Board that the appellant failed to establish a prima facie case of discrimination. Appellant asserts that he was disciplined on two occasions as "the Department held *him* to a higher standard than other employees . . . based solely on his age and gender." (Emphasis added.) In order to make out a disparate impact claim, however, appellant must demonstrate discrimination against himself as a member of a protected class.

The inapplicability of appellant's disparate impact argument to the facts of this case is best demonstrated by comparison to a case in which a test for a 1.5 mile run *was* found to have a disparate impact. For example, in *Lanning v. Southeastern Pennsylvania Transp. Auth.*, 181 F.3d 478, 482-84 (3d Cir. 1999), five women, each of whom satisfied all administrative requirements for employment as transit police officers, were not hired because they failed a similar 1.5 mile run. These women were found to have established a prima facie case of disparate impact by demonstrating that the requirement that all applicants, male and female, complete the run within twelve minutes resulted in a significantly discriminatory hiring pattern. In that case, an average of twelve percent of women applicants passed the 1.5 mile run in comparison to the almost sixty percent male pass rate.

Here, the Board specifically found that male troopers did not have a higher percentage of test failures than women troopers. Moreover, appellant's claim that he was discriminated against because female troopers and older troopers were held to a "lesser standard" suffers from a fatal factual flaw: appellant's times for the 1.5 mile test were insufficient even if he had received the "benefit" of being assessed either by the standard required of women in his age group or for older troopers.[1]

Appellant asserts that the Department's mandatory fitness program can be fairly applied by the development of "absolute standards," which presumably would not take into account physiological differences based on gender and age. But physiologically-based policies where "no significantly greater burden of compliance was imposed on

---

[1] Appellant was timed at 15:58 minutes and 15:37 minutes for his September and December 1998 retests, respectively. Women of his age group are required to run 1.5 miles in 15:26 minutes; the standard for older men is 13:53 minutes.

either sex" are permissible and nondiscriminatory. *Gerdom v. Continental Airlines, Inc.*, 692 F.2d 602, 606 (9th Cir. 1982) (en banc).

Given the Board's finding that the Department's standard for the 1.5 mile run accurately measures fitness irrespective of the age or gender of the trooper taking the test, appellant has not and cannot demonstrate that the Department has impermissibly imposed a "greater burden of compliance" on him by reason of his gender or age.[1] See also *Powell v. Reno*, C.A. 96-2743 (NHJ), slip op. at 6 (D.D.C. July 24, 1997) (upholding FBI physical fitness standards which appropriately take into account physiological differences which result in males and females of similar fitness levels performing differently on physical fitness tests).

In sum, appellant has failed to satisfy the first and fourth prongs required to make a prima facie showing of discrimination as set forth in *McDonnell Douglas*. Appellant has not demonstrated that he was part of a protected class of persons disproportionally impacted by the Department's fitness standards, nor that the circumstances in this case permit an inference of age or gender discrimination. See also *Herendeen v. Michigan State Police*, 39 F. Supp. 2d 899, 908 (W.D. Mich. 1999) (requiring in cases of "reverse discrimination" a showing of circumstances that the respondent "is that unusual employer who discriminates against the majority").

Appellant next contends that mandatory disparate physical fitness standards are impermissibly discriminatory unless related to specific job requirements. According to appellant, fitness standards which are not facially neutral are impermissible unless they are demonstrably predictive of individuals' ability to perform specific job-related tasks. We note first that each of the cases cited in support of this argument address pre-employment screening tests. See *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 410-11 (1975); *Lanning*, 181 F.3d at 481; *Guardians Ass'n of New York City Police Dep't v. Civil Service Comm'n*, 630 F.2d 79, 83 (2d Cir. 1980). Courts have required employers to demonstrate that such physical fitness standards are job related only after complainants have made out a prima facie case of

---

[1] We are not confronted here with an employer who — under a "more is better" theory — is using physical fitness tests with unnecessarily difficult standards that result in discriminatory practices. Cf. *Lanning*, 181 F.3d at 493. The Department's insistence that appellant maintain a level of cardiovascular fitness equivalent to his fellow troopers is neither discriminatory, nor inconsequential to his responsibility as a member of the Department of Public Safety.

discrimination. *Albemarle*, 422 U.S. at 425 ("the burden of showing that any given requirement [has] . . . a manifest relationship to the employment in question. . . . arises, of course, only after the complaining party or class has made out a prima facie case of discrimination") (internal quotations and citation omitted, first alteration in original). As appellant has not set forth a prima facie case of employment discrimination, we need not reach this issue.

*Affirmed.*