Filed  04/28/25


VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT  05602
802-828-2091
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 24-CV-02255

Vermont Human Rights Commission v. Vermont Department of Human Resources

## Opinion and Order on Motion to Dismiss

In this action under the Vermont Fair Employment Practices Act, 21 V.S.A. § 495 *et seq*. ("FEPA"), Plaintiff Vermont Human Rights Commission ("HRC") alleges that Defendant Vermont Department of Human Resources ("DHR") engaged in discriminatory conduct toward Danielle Fuoco and the class of State employees similarly situated to Ms. Fuoco over a number of years.  DHR now moves to dismiss the complaint pursuant to Vermont Rules of Civil Procedure 12(b)(1), (6), and (7).

## Factual Background

Per the allegations of the Complaint, Danielle Fuoco is the primary caregiver of two children born in 2016 and 2019, and is a non-managerial State employee.  DHR's paid leave program provides non-managerial employees with ten hours of personal leave for every quarter during which they use fewer than eight hours of sick leave, excluding time used under the Family Medical Leave Act or the Vermont Parental and Family Leave Act.  According to HRC, Ms. Fuoco used sick leave time to care for her children and, as a result, did not earn as much personal leave time under the program.

The Complaint cites statistics that, from July 23, 2015 to July 15, 2021, 37% of female employees accrued personal leave, compared to 44.9% of male employees.  For employees from 18 to 25 years of age, 26.5% of female employees accrued personal leave

compared to 42.5% of male employees. In the 65 and older age group, 42.7% of female employees accrued personal leave compared to 45.9% of male employees.

The HRC maintains that the DHR leave policy discriminates based on sex and violates FEPA.

## Discussion

DHR argues that there are three reasons why this action should be dismissed. First, it maintains that HRC lacks standing because the policy in question may be modified exclusively in the collective bargaining process between VSEA and the State. Vt. R. Civ. P. 12(b)(1). Second, it contends that HRC fails to state a claim for relief under FEPA because parental status is not protected under FEPA; the alleged statistical disparity is not great enough to support a claim; and, because all State employees are offered the same benefits, there is no Equal Pay Act Violation. Vt. R. Civ. P. 12(b)(6). Finally, it asserts that the Court should dismiss because DHR has failed to join a necessary party, the Vermont State Employees Association (VSEA). Vt. R. Civ. P. 12(b)(7). The Court makes the following determinations.

I.     Legal Standards

As the Vermont Supreme Court has described, when considering a motion to dismiss for lack of subject matter jurisdiction under Vt. R. Civ. P. 12(b)(1), "'all uncontroverted factual allegations of the complaint [are] accepted as true and construed in the light most favorable to the nonmoving party.' 'A court may consider evidence outside the pleadings.'" *Mullinnex v. Menard*, 2020 VT 33, ¶ 8, 212 Vt. 432, 438–39

(citations omitted); *see also Conley v. Crisafulli*, 2010 VT 38, ¶ 3, 188 Vt. 11, 14 (court may accept evidence from outside the record to resolve dispute as to jurisdiction).[1]

A motion to dismiss for failure to state a claim under Vt. R. Civ. P. 12(b)(6) faces a high bar. The Vermont Supreme Court has described the familiar standard for such motions as follows:

> "A motion to dismiss . . . is not favored and rarely granted." This is especially true "when the asserted theory of liability is novel or extreme," as such cases "should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations." In reviewing a motion to dismiss, we consider whether, taking all of the nonmoving party's factual allegations as true, "'it appears beyond doubt' that there exist no facts or circumstances that would entitle the plaintiff to relief." We treat all reasonable inferences from the complaint as true, and we assume that the movant's contravening assertions are false.

Alger v. Dep't of Labor & Indus., 2006 VT 115, ¶ 12, 181 Vt. 309, 316–17 (citations omitted); *see also* 5B A. Benjamin Spencer, *et al., Fed. Prac. & Proc. Civ.* § 1357 (4th ed.) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists.").

The record for Rule 12(b)(6) purposes is limited usually to the four corners of the complaint and any attachments to it. *See Nash v. Coxon*, 152 Vt. 313, 314–15 (1989). When a complaint relies upon a document, the document merges with the pleadings. *See Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 10 n.4, 186 Vt. 605, 609 n. 4 (mem.)

---

[1] The Supreme Court has sometimes suggested that the standards for dismissal under Rules 12(b)(1) and (6) are both evaluated on the question of whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Wool v. Off. of Pro. Regul.*, 2020 VT 44, ¶ 13, 212 Vt. 305 (internal quotation omitted). As the Court sometimes must weigh and assess facts in the context of determining jurisdiction, the Court is not convinced of the accuracy of that approach. Nonetheless, even following that direction in this case leads to the same results.

(collecting cases). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation omitted); *see also* 5C Charles Wright, *et al., Fed. Prac. & Proc. Civ.* § 1366 (court may consider "items of unquestioned authenticity that are referred to in the challenged pleading and are 'central' or 'integral' to the pleader's claim for relief").

Here, the complaint does not expressly mention the CBA attached to Defendant's motion to dismiss as Exhibit 1, but the complaint asserts claims of Ms. Fuoco as a State employee and of other State employees against the State. The allegations directly challenge DHR policies that are unquestionably intertwined with the CBA governing the employment relationship between the State and its employees. DHR has asked the Court to take judicial notice of the CBA under Vt. R. Evid. 201. HRC's arguments against that are unpersuasive and do not challenge the proffered CBA's applicability, its public availability, or its authenticity. The Court will take notice of Exhibit 1.

Dismissal under Rule 12(b)(7) involves a multi-factor analysis that is discussed in detail below.

II.      HRC's Standing

DHR contends that HRC lacks standing because the policy in question cannot be modified outside of the collective bargaining process between VSEA and the State. DHR relies on 3 V.S.A. § 904, which provides for collective bargaining for "[a]ll matters relating to the relationship between the employer and employees . . . except those matters that are prescribed or controlled by statute." 3 V.S.A. § 904(a). DHR argues

that there is no case or controversy because HRC's complaint about the discriminatory nature of the policy cannot be redressed by the Court, and DHR cannot "unilaterally change the policy, even in the face of a Court order, because DHR can modify the policy only through the bargaining process with VSEA pursuant to 3 V.S.A. § 904." Motion to Dismiss at 7–8.

HRC counters that the Legislature plainly gave it authority to investigate and enforce complaints of unlawful discrimination, "even when the party complained against is a State agency." 9 V.S.A. § 4552(b). To take DHR's argument to its logical extreme, neither HRC nor an employee acting in their individual capacity could bring an action against a State agency for discrimination resulting from a term of any collective bargaining agreement ("CBA"), no matter how egregious, nor could a Court penalize such an employer for such discrimination.

FEPA expressly prohibits employment practices, *inter alia*, "[f]or *any employer*, employment agency, or labor organization to harass or discriminate against any individual because of race, color, religion, ancestry, national origin, sex, sexual orientation, gender identity, place of birth, crime victim status, or age or against a qualified individual with a disability." 21 V.S.A. § 495(a)(1) (emphasis added). There is no provision in FEPA that immunizes State agencies from actions under FEPA, or relief under FEPA, just because a policy resulting in discrimination is implemented pursuant to a CBA. Neither FEPA nor section 904 nullify the Superior Court's jurisdiction to hear such actions or render such relief as is appropriate under FEPA.

The motion to dismiss based on standing is denied.

III.    Plaintiff's FEPA claims

DHR next argues that HRC fails to state a claim upon which relief can be granted under FEPA. DHR notes that, because the policy in question is facially neutral, HRC's claims must be based upon the disparate impact of the policy upon women. HRC alleges that the paid personal leave incentive program discriminates against female employees who are at an age where they are involved in parenting young children. Complaint, ¶ 36. According to DHR, this means that the claim is actually about discrimination due to parenthood, not due to sex.

To succeed in a disparate impact claim, DHR must show that the policy discriminates against Ms. Fuoco as a member of a protected class. *See In re Scott*, 172 Vt. 288, 295 (2001) ("In order to make out a disparate impact claim, however, appellant must demonstrate discrimination against himself as a member of a protected class."). FEPA prohibits discrimination based on the basis of "race, color, religion, ancestry, national origin, sex, sexual orientation, gender identity, place of birth, crime victim status, or age or against a qualified individual with a disability." 21 V.S.A. § 495(a)(1); see also 21 V.S.A. § 495(2)–(4). It does not expressly include parenthood as a protected class.

Ms. Fuoco is a woman and, therefore, is a member of a protected class. Making all reasonable inferences in favor of HRC, a possible theory of disparate impact is that, although some men will also use sick leave to care for children and some women will not use sick leave to care for children, for reasons that need not be established at this stage in the litigation, women who are non-managerial employees are more likely to use more sick leave and are less likely to receive the benefit that is awarded to a higher percentage

of male non-managerial employees. Thus, although parenthood has a connection to the facts that lead to the alleged disparate impact discrimination, the Court cannot at this juncture rule out that HRC could succeed in proving that such a disparate impact is based on sex.

DHR also contends that the alleged statistical disparity is not significant enough to support a FEPA claim. Federal regulations interpreting disparate impact claims, as DHR points out, state that "[a] selection rate for any race, sex, or ethnic group which is less than four-fifths ( $^4/_5$ ) (or eighty percent) of the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact, while a greater than four-fifths rate will generally not be regarded by Federal enforcement agencies as evidence of adverse impact." 29 C.F.R. § 1607.4(D). DHR invites the Court to dismiss the FEPA claims because the disparities that HRC pled are smaller than that rate.

It is true that "FEPA is patterned on Title VII of the Civil Rights Act of 1964, and the standards and burdens of proof under FEPA are identical to those under Title VII." *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 161 (1992). The specific regulations that DHR cites, however, relate to hiring or promotion and not, strictly speaking, to benefits. But more crucially, those regulations also state that "[s]maller differences in selection rate may nevertheless constitute adverse impact, where they are significant in both statistical and practical terms or where a user's actions have discouraged applicants disproportionately on grounds of race, sex, or ethnic group." 29 C.F.R. § 1607.4(D). Accordingly, at this early stage, and even if the Court applied the federal regulations, the Court is unwilling to conclude that no claim may be made in this case.

DHR's final argument for failure to state a claim is that HRC's claim of an Equal Pay Act violation must fail because all State employees are offered the same benefits. To establish a violation of the Equal Pay Act, "a plaintiff must establish that "'an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Vermont Hum. Rts. Comm'n v. State, Dep't of Corr.*, 2015 VT 138, ¶ 18, 201 Vt. 62, 72–73 (quoting *Corning Glass Works v. Brennan,* 417 U.S. 188, 195 (internal quotation omitted)); *see* 21 V.S.A. § 495(a)(7). DHR argues that, because the paid leave policy plainly applies equally to men and women and does not apply a different rate based on sex, HRC has articulated no claim under the Equal Pay Act. In essence, DHR contends that the Equal Pay Act does not extend to disparate impact claims but must be based on disparate treatment.

Section 495(a)(7) provides that an employer may afford different wages when the difference is based on a seniority system, a merit system, a system in which earnings are based on productivity, or "[a] bona fide factor other than sex." Under that final exception, the Legislature provided that "[a]n employer asserting that differential wages are paid pursuant to this subdivision shall demonstrate that the factor does not perpetuate a sex-based differential in compensation, is job-related with respect to the position in question, and is based upon a legitimate business consideration." *Vermont Hum. Rts. Comm'n v. State, Dep't of Corr.*, 2015 VT 138, ¶ 15, 201 Vt. 62, 71 (quoting 21 V.S.A. § 495(a)(7)(A)(iv).

DHR has not come forward with, nor has the Court located any authority that clearly rules out the possibility of a claim under this subsection that alleges disparate

impact.  Nor, however, has HRC come forward with clear precedent to the contrary.  The Court views this as a novel issue.  Such matters are ill-suited to dismissal on a cold record.  *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 11, 209 Vt. 514, 520 (Court is "particularly wary of dismissing novel" claims without factual development).

The motion to dismiss for failure to state a claim is denied.

IV.        Joinder of VSEA as a Necessary Party

Lastly, DHR contends that because the paid leave policy that is the subject of this action was bargained for in the Collective Bargaining Agreement ("CBA") between the State and VSEA, "VSEA has an interest in this dispute, relief cannot be awarded without VSEA, and the adjudication of this dispute without VSEA would violate a valid contract (the CBA) between VSEA and the State."  Motion to Dismiss at 4.

The Vermont Rules of Civil Procedure provide that a party may move to dismiss for "failure to join a party under Rule 19."  Vt. R. Civ. P. 12(b)(7).  Rule 19 "sets out the tests by which the court is to decide whether a missing party is one who must be joined to protect either his own interests or those of persons already parties."  Reporter's Notes, Vt. R. Civ. P. 19.  "If such a party has not been joined and can be served with process, the court, on defendant's motion under Rule 12(b)(7) or Rule 21, or on its own motion, must order him joined."  *Id*.  A party is necessary if in their absence, "complete relief cannot be accorded among those already parties," or "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's

claimed interest." *Beaudoin on Behalf of New England Expedition Ltd. P'ship II v. Feldman*, 2018 VT 83, ¶ 46, 208 Vt. 169, 190 (quoting Vt. R. Civ. P. 19(a)).

If a party is necessary, it shall be joined. If it cannot be, the analysis turns to whether that party is so "indispensable" that the case should be dismissed or should proceed without them. *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118 (1968). To make that determination, the "factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." *Id.* (quoting Fed. R. Civ. P. 19(b)).[2]

DHR's assertion that VSEA is a necessary party is similar to claims made nationally in similar cases. The determination of whether a union is a necessary party to litigation alleging that an employer discriminated against an employee or class of employees hinges upon the relationship between the challenged practices, the terms of a collective bargaining agreement and whether the requested relief may affect the fulfillment of the terms of the collective bargaining agreement. Unions are not necessary parties when the discrimination claims relate to "the exercise of management prerogatives which would have no impact on the collective bargaining agreement or the rights of the union" or when the basis of the claims is "unequal application of neutral contract provisions" that "would not compel revision of these contract terms." *Karan v.*

---

[2] Vermont's Rule 19(b) is the same.

*Nabisco, Inc.*, 78 F.R.D. 388, 401 (W.D. Pa. 1978). Unions are also not necessary parties when complete relief can be afforded to those already parties, and relief granted to the complaining employees will not affect the employer's obligations to other employees under the collective bargaining agreement. *See, e.g., Phillips v. Carborundum Co.*, 361 F. Supp. 1016, 1020 (W.D.N.Y. 1973).

Unions are necessary parties, however, if the litigation "seeks to rewrite portions" of collective bargaining agreements, because, "[o]nce the validity of certain provisions in the agreements has been ruled on, the absent unions' interests are affected without their having been accorded an opportunity to be heard by the Court." *Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78, 86 (S.D.N.Y. 1973) (directing defendant to give notice to absent unions who "may then join . . . as parties plaintiff," or if they do not, "they will be brought in as parties defendant"). Unions are also necessary parties when they have an interest in the litigation's potential to interpret or to limit the application of collective bargaining agreements. *Greer v. Pac. Gas & Elec. Co.*, No. 1:15-CV-01066-EPG, 2016 WL 2939148, at *3 (E.D. Cal. May 18, 2016).

Similarly, unions can be deemed necessary parties if a determination in the lawuit would put the employer at risk of inconsistent obligations under the collective bargaining agreement. *Id*. "The potential for inconsistent obligations arises when … plaintiff challenges specific terms of employment contained within the collective bargaining agreement and appropriate relief may require revision of those terms of employment." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 622 F. Supp. 1147, 1150 (D. Or. 1985). Even if the court could potentially "fashion a type of relief that would eliminate the discrimination complained of by plaintiffs without affecting prejudicially the rights of the unions or its

members," the court should order a union to be joined to ensure that its remedy will be effective. *Nat'l Org. for Women, Inc. (NOW), St. Paul Chapter v. Minnesota Min. & Mfg. Co.*, 73 F.R.D. 467, 469 (D. Minn. 1977) (also noting that joinder of unions ensures that employees who are not part of the allegedly affected class are represented).

The "personal leave as sick leave incentive" is a term of the CBA between the State and the VSEA's non-management bargaining unit. *See* Exh. 1, Art. 43. DHR argues that VSEA is a necessary party because DHR cannot unilaterally change the policy. *See* 3 V.S.A. § 904(a) (benefits and leave compensation are the subject of collective bargaining). The instant complaint seeks, *inter alia*, injunctive and declaratory relief and seeks to stop DHR from enforcing the terms of the existing CBA. In the event that HRC prevails and the Court grants relief prohibiting the State from honoring the CBA, VSEA's rights (and the rights of the non-managerial employees it represented in the CBA, some of whom benefit from the policy) would be impacted, since they would no longer receive the benefit of the paid leave policy for which they bargained in the CBA. Moreover, in the event of an injunction against implementation of the policy, if VSEA is not joined in this action, VSEA or its members would not be precluded from enforcing DHR's obligations under the CBA, which would be inconsistent with its obligations pursuant to an injunction. Accordingly, the Court finds that the VSEA is a necessary party to this action as to the current CBA.

The complaint, though, also seeks relief in the form of damages concerning prior CBAs. As to such claims, the Court is not convinced that the VSEA's interests make it a necessary party. The prior CBA has concluded. The Court does not perceive how allowing damages against the State for past acts of discrimination under a prior

agreement would have an impact on the union at this juncture. The Court concludes that the VSEA is not a necessary party as to the damages claims not falling under the current CBA.

The determination that VSEA is necessary to this litigation does not, however, automatically result in dismissal. The next step is to determine whether the party can be joined. If it cannot, then the Court must "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed" because the person is "indispensable." Vt. R. Civ. P. 19(b). "The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." *Id*.

In considering whether the VSEA can be joined in this action, the Court concurs with the notion that "unions occupy a somewhat unique legal position," such that "certain issues and problems occasionally require special attention by courts called upon to decide questions of compulsory joinder." 7 Charles Wright, *et al., Fed. Prac. & Proc. Civ.* § 1620 (3d). Just so in this case. On the one hand, HRC represents the interest of those employees allegedly harmed by the alleged discrimination—who are also represented by VSEA. On the other hand, VSEA is also party to the agreement that allegedly brought about the harm, and represents other employees who arguably benefit from the existing policy and who might be harmed if the policy were enjoined. Further,

VSEA has an interest in enforcing the terms of the CBA that it negotiated and its members endorsed.

The parties have provided little, if any, briefing to the Court analyzing the case law directly concerning joining unions in discrimination actions that raise challenges to the terms of collective bargaining agreements. There is plenty out there, however. Those cases have struggled mightily to balance the competing issues at play in these circumstances. Some have said that unions should be joined as defendants. *See, e.g., Kinnunen v. Am. Motors Corp.*, 56 F.R.D. 102, 103 (E.D. Wis. 1972). Some have given unions notice of the lawsuit and given them time to join as a party plaintiff or be subject to being joined in the action as a defendant. *See, e.g., Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78, 87 (S.D.N.Y. 1973). Other decisions have been more inventive and have joined unions as "nonaligned" parties. *See, e.g., Forsberg v. Pac. Nw. Bell Tel. Co.*, 622 F. Supp. 1147, 1150 (D. Or. 1985).

A significant complicating factor here in this instance is that HRC claims that it lacks the statutory authority to bring an action against the VSEA. 9 V.S.A. § 4552(b)(1) ("The Commission shall also have jurisdiction when the party complained against is a State agency."). Neither side has discussed in detail, however, whether joining the VSEA in one fashion or another, as noted above, would necessarily preclude the case from moving forward. It may well be argued that joining the union to the lawsuit may not change its essential nature as being "against [] a State agency." The Court takes no view on that point at this time.

While the State has raised serious arguments relating to the indispensability issue, the Court remains lodged at the prior step of the analysis: the feasibility of joinder.

Prior to embarking on any potentially advisory analysis of indispensability, the Court believes it prudent to entertain additional briefing from the parties as to the feasibility of joinder, in one procedural form or another, in light of the national cases concerning unions and of the unique scope of the HRC's authority.

Conclusion

In light of the foregoing, the motion to dismiss is denied, in part. The parties shall provide additional briefing consistent with this Order as follows: DHR shall file its memorandum within 30 days. HRC may submit a response within 30 days. Any reply memorandum is due 14 days thereafter.

Electronically signed on Thursday, April 24, 2025, per V.R.E.F. 9(d).


_____
Timothy B. Tomasi
Superior Court Judge

24-CV-02255 Vermont Human Rights Commission v. Vermont Department of Human Resources