Terrence W. HATTIE, et al., Plaintiffs,

v.

Richard HALLOCK, et al., Defendants.

No. 1:98–CV–0025.

United States District Court,
N.D. Ohio,
Eastern Division.

May 11, 1998.

Terrence W. Hattie, Grafton, OH, plaintiff pro se.

James Eubank, GCI, Grafton, OH, plaintiff pro se.

Todd R. Marti, Office Of The Attorney General, Corrections Litigation Section, Columbus, OH, for Richard Hallock, Darlene Krandall, Debbie Madden, Officer Robbins, Officer Provosnick, Officer Jeffrey, Jake Noble, John Doe, 1–25 of Department of Rehabilitation and Correction.

Timothy Newell, Grafton, OH, plaintiff pro se.

## MEMORANDUM & ORDER

O'MALLEY, District Judge.

Plaintiffs Terrence Hattie, James Eubank, and Timothy Newell are prisoners at the Grafton Correctional Institution ("GraCI")

and describe themselves as "jailhouse law-yers"—they work at the GraCI law library assisting other prisoners with legal research. The plaintiffs bring this action *pro se* against: (1) GraCI Warden Richard Hallock; (2) Gra-CI Deputy Warden Darlene Krandall; (3) GraCI librarian Debbie Madden; (4) GraCI job coordinator Jake Noble; (5) GraCI correctional officers Robbins, Provosnick, and Jeffrey; and (6) unidentified "John Doe" defendants working at the Ohio Department of Rehabilitation and Correction ("ODRC").

Plaintiffs allege that officers Robbins and Provosnick seized from the GraCI library two file cabinets containing evidence and legal documents associated with other cases the plaintiffs were litigating. Plaintiffs further allege the defendants then refused to return (and destroyed some of) these materials, removed plaintiffs from their positions as library assistants, and prohibited plaintiffs from returning to the library. Based on these allegations, plaintiffs bring claims for: (1) violation of their First Amendment right to access to the courts; (2) violation of their Fourth Amendment right to be free from unreasonable seizures; (3) violation of their Fourteenth Amendment right to due process; and (4) violation of their First Amendment right to be free from retaliation for petitioning for redress of grievances.

Currently pending are the following motions: (1) plaintiffs' motion for preliminary injunction (docket no. 4); (2) plaintiffs' motion for waiver of security (docket no. 5); (3) defendants' motion to dismiss for lack of jurisdiction (docket no 7); (4) plaintiffs' motion for leave to amend the complaint (docket no. 15); (5) Hattie's and Eubank's motion for telephone status conference (docket no. 17); (6) defendants motion for extension of time (docket no. 2.0); (7) motion by John Perotti for reconsideration of an earlier order denying his motion to intervene as a party plaintiff (docket no. 23); and (8) plaintiffs' motion for leave to file second amended complaint (docket no. 28).

For the reasons below, the Court rules on these pending motions as follows:

1. defendants motion to dismiss is **GRANTED** as to plaintiffs Hattie and Eubank, and **DENIED** as to plaintiff Newell;

2. Hattie's and Eubank's motion for status conference is **DENIED** as moot;

3. defendants' motion for extension of time is **DENIED** as moot.

4. plaintiffs' motion for leave to file an amended complaint, and motion for leave to file a second amended complaint, are both **DENIED**.

Furthermore, pursuant to Local Rule 72.1 and the Court's earlier Order of reference dated February 2, 1998, the Court refers this case back to Magistrate Judge Hemann for further pre-trial oversight, including rulings or recommended rulings on the remaining pending motions.

### I. Defendants' Motion to Dismiss.

Earlier, pursuant to Local Rule 72.1 and 28 U.S.C. § 636, this Court referred this case to Magistrate Judge Patricia A. Hemann for, *inter alia,* a report and recommended ruling on any dispositive motions. On April 15, 1998, the Magistrate Judge filed a report recommending that the defendants' motion to dismiss be granted as against all plaintiffs, without prejudice, because none of the plaintiffs had met the jurisdictional prerequisite of exhausting their administrative remedies. The Magistrate Judge did not address any of the other pending motions, noting that if this Court adopted her recommendation, then the other motions would become moot.

The plaintiffs each filed objections to the Magistrate Judge's recommendation. Essentially, Newell argues that he has, in fact, exhausted his administrative remedies. Hattie and Eubank argue they are excused from this requirement.

As the Magistrate Judge correctly notes, 42 U.S.C. § 1997e(a) provides that "no action shall be brought with respect to prison conditions ... under [42 U.S.C. § 1983] ... by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." Failure of a prisoner to affirmatively demonstrate he has exhausted available state remedies is grounds for automatic dismissal. *Brown v. Toombs,* 139 F.3d 1102, 1998 WL 136185 at *5–6 (6th Cir. Mar.27, 1998).

Magistrate Judge Hemann determined that Eubank, Newell, and Hattie each failed to affirmatively demonstrate that he had exhausted his available state remedies. Specifically, the Magistrate Judge noted that the defendants have available administrative remedies pursuant to Ohio Admin.Code §§ 5120–9–30 & 31, but each defendant failed to show he had pursued the grievance procedures outlined in those regulations. The Magistrate Judge was correct that each defendant failed to make this showing in his briefing before the Magistrate Judge. In their objections to the Magistrate Judge's recommended ruling, however, the defendants have presented additional material suggesting that some of them did pursue their available state grievance procedures, to varying degrees.

Ohio Admin.Code § 5120–9–31 sets forth a grievance procedure available to prison inmates. An inmate may file a grievance regarding "any aspect of institutional life," § 5120–9–31(B), except that an inmate may not bring a grievance "as an appeal" of a "specific disciplinary decision" handed down by the "rules infraction board or institutional officer," *Id.* at 31(C). Also, an inmate may not bring a grievance regarding "complaints unrelated to institutional life such as legislative action ... judicial proceedings and sentencing" *Id.*

The grievance mechanism works as follows. First, the inmate must attempt to informally resolve his grievance by contacting "the appropriate institutional department or staff member whose area of responsibility is related to the grievance." *Id.* at § 31(F). If informal grievance resolution procedures do not work, the inmate may then notify the "inspector of institutional services" of his grievance. *Id.* The inspector may then require the inmate's grievance to be in writing on a special grievance form. *Id.* at § 31(H)(2). After receiving the inmate's grievance, the inspector must investigate the grievance, *id.* at § 31(H)(4), and resolve the grievance within 10, or at most 15, days. *Id.* at § 31(H)(5).[1] The inspector's resolution must be in writing and must show "the reasons for that resolution." *Id.* at § 31(H)(7).

If the inmate disagrees with the inspector's resolution, then the inmate may appeal to the chief inspector of institutional services, who must then notify the inmate of his final resolution in writing. *Id.* at § 31(H)(8). If the inmate's grievance is against the inspector or the prison warden ("institution manager") themselves, then the inmate may file his grievance directly with the chief inspector. Ohio Admin.Code § 5120–9–30(G). The chief inspector will only entertain a grievance directly, however, if the inmate can "show that the [warden] or inspector ... was personally involved in a violation of law or policy and approved it or did nothing to prevent it." *Id.* In such a case, the chief inspector must again notify the inmate of his final resolution in writing. *Id.* at § 30(H).

It is clear that, pursuant to these inmate grievance mechanisms, an inmate "exhausts his administrative remedies" only when he receives a written resolution from the chief inspector of institutions. Whether the inmate takes his grievance directly to the chief inspector (because the grievance names the inspector or the prison warden), or instead appeals his grievance to the chief inspector after initial resolution from the inspector, an inmate only exhausts his administrative remedies after the chief inspector passes on the grievance.[2] Thus, plaintiffs must show they presented their grievance to the chief inspector before they can pursue their claim in this case.[3] The Court examines separately whether each plaintiff meets this burden.

---

1. If the inspector does not resolve the dispute within 15 days, the inmate may immediately take his grievance to the chief inspector of institutions. *Id.* at § 31(H)(5). In some cases, the inspector must refer the grievance to the institution manager (that is, the prison warden) with a recommendation, and the manager then resolves the dispute. *Id.* at § 31(H)(6).

2. If an inmate disagrees with the inspector's resolution, he must appeal to the chief inspector within five working days. Ohio Admin.Code § 5120–9–31(H)(8). Presumably, even if the inmate's appeal was not timely filed, the chief inspector would still issue a written resolution, if only affirming the inspector's resolution on the basis of lack of timely appeal.

3. The easiest and most obvious way for a prisoner plaintiff to show he has presented his grievance to the chief inspector is by "attach[ing] to his § 1983 complaint the [chief inspector's] ad-

### A. Newell.

Attached to Newell's objections to the Magistrate Judge's report are several exhibits. Exhibit B is a copy of a grievance Newell filed against "Warden Anderson," stemming from the seizure of the filing cabinet from the prison law library. Newell complained in his grievance, *inter alia* that: (1) the seized file cabinet contained his legal documents from an ongoing case captioned *Newell v. Coyle;* (2) he had been denied access to his legal documents for several days; and (3) Warden Anderson had approved the file cabinet seizure and had written to Newell (in response to Newell's attempt at informal grievance resolution) that the seizure was approved by both the legal office of the ODRC and the Ohio Attorney General. Also attached to Newell's objections is Exhibit E, which is a decision of Chief Inspector Jorgensen–Martinez regarding Newell's grievance. (Newell's grievance went directly to the chief inspector, because it was lodged against the prison warden.) The chief inspector found that Newell had "not shown a violation of law or policy" and the grievance was dismissed.

The applicable regulations are unclear on what is the effect of a chief inspector's resolution when made "other than on the merits." It is arguable that the chief inspector's decision regarding Newell's grievance was not "on the merits," but instead was a dismissal "for lack of jurisdiction," based on Newell's failure to "show that the [warden] or inspector ... was personally involved in a violation of law or policy and approved it or did nothing to prevent it." Ohio Admin.Code § 5120–9–30(G). In such a case, in order to exhaust all of his administrative remedies, Newell would arguably be required to file another grievance, pursuant to § 5120–9–31(H)(2); if the inspector did not resolve this second grievance to the inmate's satisfaction, the inmate could then bring the grievance to the chief inspector for a resolution "on the merits," pursuant to § 31(H)(8).

For two reasons, however, the Court determines that Newell is not required to file a second grievance in order to exhaust his administrative remedies. First, the chief inspector's resolution appears to include a substantive analysis of Newell's complaint; thus, the resolution appears to be sufficiently "on the merits" to satisfy the exhaustion requirement. Second, it appears that whether Newell's grievance is sent directly to the chief inspector, pursuant to § 30(G), or first to the inspector, pursuant to § 31(H)(2), is determined not directly by Newell but by whom Newell names as the person against whom his grievance is brought. By naming Warden Anderson, Newell's complaint went directly to the chief inspector; the chief inspector determined that Anderson did not violate any law or policy. Thus, Newell cannot really "choose" to pursue a grievance under § 31(H)(2), if he wants to ultimately pursue a claim against Anderson.

In sum, the Court finds that Newell has shown he has exhausted his administrative remedies, as required under *Brown v. Toombs.* Accordingly, even though Newell did not make this showing until after the Magistrate Judge filed her recommended ruling, the Court concludes it cannot accept the Magistrate Judge's recommendation that it dismiss Newell's claims without prejudice. Newell's objections are well-taken, and the defendants' motion to dismiss Newell's claims is denied.[4]

### B. Eubank and Hattie.

Neither Eubank nor Hattie provide the Court with any decision by the chief inspec-

---

ministrative decision, if it is available, showing the administrative disposition of" the grievance. *Brown,* 139 F.3d at 1104.

4. The Court notes that in *Brown v. Toombs,* the Sixth Circuit Court of Appeals: (1) directed that: (1) a prisoner "should attach to his § 1983 complaint the administrative decision, if it is available, showing the administrative disposition of his complaint," and (2) suggested that district courts "should enforce the exhaustion require-

ment sua sponte" if the complaint does not "satisf[y] § 1997e(c)(2)." *Brown,* 139 F.3d at 1104. Even though plaintiffs' initial complaint in this case did not fully allege and show exhaustion of administrative remedies, the Court does not dismiss the complaint in this case pursuant to *Brown,* because *Brown* was not decided until after plaintiffs filed this action and only two weeks before the Magistrate Judge issued her report.

tor regarding their own grievance. Rather, they argue that: (1) they should be deemed to have exhausted their administrative remedies by virtue of Newell having done so; (2) they have been estopped from pursuing grievance procedures available under § 5120–9–30 & 31 because they received disciplinary action; and (3) they attempted to file grievances, but their grievances were returned with no response.

■ Regarding Eubank's and Hattie's first argument, plaintiffs latch on to the doctrine of "vicarious exhaustion," which holds "that exhaustion of administrative remedies by one member of the class satisfies the requirement for all others with sufficiently similar grievances." *Hartman v. Duffey*, 88 F.3d 1232, 1235 (D.C.Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997). This doctrine, however, is only available to plaintiffs in a class-action lawsuit, where a class is certified pursuant to Fed.R.Civ.P. 23(b)(2). *Id.* This is not such a case, so plaintiffs' vicarious exhaustion argument fails.[5]

■ Regarding Eubank's and Hattie's second argument, all three plaintiffs received discipline (including removal to isolation for up to 15 days) for allegedly keeping contraband in the seized file cabinet—a Class II rule violation.[6] As best the Court can tell, all three plaintiffs appealed their discipline, pursuant to Ohio Admin.Code § 5120–9–09(J–M). Once the appeal process results in an affirmation of the discipline by the director of the ODRC, the discipline decision is final. *Id.* at § 09(M). Eubank and Hattie argue that because they filed appeals regarding their discipline, and because a prisoner cannot use the grievance process as an addition-

al appeal of a discipline decision, *id.* at § 31(C), they have been estopped from pursuing the grievance procedure. This argument fails simply because an inmate can pursue *both:* (1) an appeal of a discipline decision; *and* (2) a grievance regarding a prison policy or rule that may be related to the discipline received.[7] Indeed, Newell did precisely this, and his pursuit of the second action to conclusion permits him to avoid defendants' motion to dismiss. The fact that Eubank and Hattie received, and appealed their receipt of, discipline for allegedly possessing contraband does not estop them from grieving the defendants' alleged action of violating their First Amendment access to the courts.

■ Finally, Eubank swears via affidavit that he tried to "sen[d] a formal grievance to the Office of Chief Inspector ... [via] interdepartmental mail as in part practice, ... [but] this grievance was returned to me, marked 'return.'" Docket no. 10, affid. at 2. Eubank does not attach to any document a copy of this formal grievance. Hattie does not offer any parallel testimony, but he does attach a "kite," or informal complaint form, which states, "so that I can satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a), please let this serve as notification of grievance about the summary seizure/confiscation of my case files and privileged attorney/client letters...." Docket 10, exh. 4. The kite is marked "return," with a note from defendant Krandall reading: "as we've discussed numerous times in the past—you MUST follow proper procedure in filing a complaint" and "go ahead and start *proper* paperwork beginning with the informal." The kite attached by Hattie is in a

---

5. In a related vein, Eubank and Hattie argue that, in light of the denial of Newell's grievance, their pursuit of a grievance should be excused as "futile." Not only have Eubank and Hattie failed to bear their burden of making a "clear and positive" showing of futility, *Hickey v. Digital Equip. Corp.*, 43 F.3d 941, 945 (4th Cir.1995), but this argument contravenes the clear language of 42 U.S.C. § 1997e(a), which mandates exhaustion of administrative remedies and provides for no "futility exception."

6. The record reveals that the "contraband" apparently consisted of copies of other inmate's

legal documents, unpaid-for photocopies, pages ripped from legal books, state-owned office supplies, and so on.

7. Similarly, as best the Court can tell, all three plaintiffs: (1) lost their jobs as prisoner law clerks; and (2) appealed this decision to finality, pursuant to Ohio Admin.Code § 5120–9–53(G–I). Again, an inmate can pursue *both:* (1) an appeal of a job reclassification decision; *and* (2) a grievance regarding a prison policy or rule that may be related to the discipline received.

different form than the formal grievance attached by Newell.

Reviewing this evidence, the Court is convinced that the only reason Hattie and/or Eubank had their "grievances" returned to them without response is that neither Hattie nor Eubank filed the proper grievance form. As noted, the inspector of institutional services may require an inmate's grievance to be in writing on a special grievance form. *Id.* at § 31(H)(2). Neither Hattie nor Eubank have shown they met this requirement, which is a formalistic but reasonable prerequisite to their exhaustion of administrative remedies.

In sum, the Court finds that Hattie and Eubank have both failed to exhaust their administrative remedies, which they must do before bringing this action. Accordingly, the Court finds that Hattie's and Eubank's objections to the Magistrate Judge's recommendation are not well-taken. Defendants' motion to dismiss Hattie and Eubank as plaintiffs from this case is granted, without prejudice. If Hattie and Eubank later exhaust their administrative remedies, they may again file their claims in federal court.

*II. Other Motions.*

Given that this case presently remains viable as to the claims of plaintiff Newell, and that the Court again refers this matter to Magistrate Judge Hemann for pretrial oversight, the undersigned will generally refrain from ruling on the remaining pending motions at this juncture, so that the Magistrate Judge may undertake her own first analysis. The Court does, however, deny as obviously moot defendants' motion for extension of time and Hattie's and Eubank's motion for status conference.

Furthermore, the basis for plaintiffs' motion for leave to file an amended complaint, and motion for leave to file a second amended complaint, was to include specific allegations of exhaustion of remedies and to attach documents regarding the state's administrative decisions. Plaintiffs already have (or should have) filed all the relevant documents as attachments to their objections to the Magistrate Judge's report. In those objections, the plaintiffs also placed

into the record all their allegations and arguments regarding exhaustion. Accordingly, both motions for leave to amend are denied.

**IT IS SO ORDERED.**