NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 33

No. 2019-180

| | |
|---|---|
| Patrick Mullinnex et al. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Civil Division |
| | |
| Lisa Menard et al. | October Term, 2019 |

Michael R. Kainen, J.

Matthew Valerio, Defender General, and Kelly Green, Prisoners' Rights Office, Montpelier, for Plaintiffs-Appellees.

Stephen J. Soule and Pamela L.P. Eaton of Paul Frank + Collins P.C., Burlington, and Michael Bentley and Molly Walker of Bradly Arant Boult Cummings LLP, Jackson, Mississippi, for Defendants-Appellants.

PRESENT: Reiber, C.J., Robinson and Eaton, JJ., and Skoglund, J. (Ret.) and Howard, Supr. J. (Ret.), Specially Assigned

¶ 1. **EATON, J.** Defendants Michael Touchette and Centurion Healthcare[1] bring this interlocutory appeal from the trial court's certification of a class of plaintiffs in a Vermont Rule of Civil Procedure 75 action. The class certified below is comprised of persons in the custody of the Vermont Department of Corrections (DOC), each of whom suffers from opioid-use disorder and alleges that defendants' medication-assisted treatment (MAT) program does not meet prevailing

---

[1] We make note of defendants' indication that, although the amended petition named "Centurion Healthcare," the name of this commercial entity is in fact "Centurion of Vermont, LLC."

medical standards of care as required by Vermont law.  Defendants, the former Commissioner of the DOC and its contract healthcare provider, argue that the trial court erred both in finding that plaintiff Patrick Mullinnex exhausted his administrative remedies before filing suit and in adopting the vicarious-exhaustion doctrine favored by several federal circuits in order to conclude that Mullinnex's grievances satisfied the exhaustion requirement on behalf of the entire class. Defendants also contend that the trial court's decision to certify the class was in error because plaintiffs did not meet Rule 23's numerosity, commonality, typicality, and adequacy-of-representation requirements.  See V.R.C.P. 23(a).  We reverse, concluding that—assuming arguendo that the vicarious-exhaustion doctrine is appropriately applied in Vermont—it could not apply in this case because, on the record before the trial court, no member of the putative class succeeded in exhausting his administrative remedies.  Because plaintiffs' failure to exhaust leaves the courts without subject-matter jurisdiction, we do not reach defendants' challenges to the merits of the class-certification decision.

¶ 2.    Pursuant to 28 V.S.A. § 801(a), the DOC must "provide health care for inmates in accordance with the prevailing medical standards."  In 2017, the Legislature added a provision requiring that: (1) inmates receiving MAT prior to entering a correctional facility be continued in that treatment so long as medically necessary; (2) inmates who screen positive for opioid-use disorder while incarcerated may elect to receive MAT if it is deemed medically necessary; and (3) inmates who so elect "shall be authorized to receive the medication as soon as possible and for as long as medically necessary."  2017, No. 176 (Adj. Sess.), §§ 3-4; 28 V.S.A. §§ 801(e), 801b(a). Plaintiffs allege that the MAT program established by defendants following the amendments to §§ 801 and 801b does not meet prevailing medical standards of care.

¶ 3.    An inmate who believes he or she is not receiving medical care comporting with the requirements of §§ 801 or 801b may seek redress through the DOC's grievance process.  The DOC has fulfilled its legislative directive to "establish procedures to review the grievances of

2

inmates." 28 V.S.A. § 854; see Offender Grievance System—APA Rule #06-006, Code of Vt. Rules 13 130 005 [hereinafter DOC Grievance Rules], https://doc.vermont.gov/sites/correct/files/documents/policy/correctional/320-Grievance-System-Rule.pdf [https://perma.cc/EAA4-SAQ7]. The DOC Grievance Rules set forth the following procedural steps to govern the resolution of nonemergent grievances which do not allege "serious employee misconduct."[2] DOC Grievance Rules §§ 3, 5. An inmate who wishes to file a grievance must first file an informal complaint. Id. § 5(a). If the inmate is dissatisfied with the outcome of the informal-complaint-resolution process, he or she may file a formal grievance. Id. § 5(b). The "local chain of command" must respond to the grievance within twenty business days. Id. § 5(d), (e). The inmate may choose to appeal that local response. Id. § 5(e). "Appeal[s] to the Commissioner will be responded to within 20 business days." Id. Finally, the Rules require that inmates "exhaust administrative remedies provided by the Department of Corrections' grievance system before commencing litigation." Id. § 5(g).

¶ 4. The record reveals that the instant proceeding finds its inception in a DOC grievance form submitted by plaintiff Mullinnex on September 20, 2018, following an informal complaint to "medical" the day before. Therein, Mullinnex alleged that, although he had "been approved for MAT," he would not be induced until thirty days prior to his release from the facility despite having "a medical need now for MAT" and a desire "to get help with [his] addiction and be induced." At some point during the following month,[3] Mullinnex appealed the local response to his grievance to the corrections executive. Finally, Mullinnex filed an appeal to the Commissioner indicating his dissatisfaction with a grievance response from the corrections

---

[2] Plaintiffs here do not contend that their grievances were either emergent in nature or founded in allegations of serious employee misconduct.

[3] The precise date on which this appeal was submitted is illegible, but at oral argument, counsel for plaintiffs conceded that "the way Mr. Mullinnex may have 'flubbed' the grievance process is that he appealed a few days too early to a mid-level executive."

executive, which Mullinnex indicated was dated October 30, 2018. Although the form providing for an appeal to the Commissioner contained a line designated for the date the appeal was submitted, this line was left blank. However, the form was filed with the civil division of the superior court on November 2, 2018, together with Mullinnex's request for emergency injunctive relief naming "Lisa Menard et al."[4] as the defendants. Although the court received Mullinnex's filing several days later, he signed and dated it on October 30. Given this timing, it is clear that Mullinnex filed his administrative appeal to the Commissioner and his civil action contemporaneously.

¶ 5. Several days later, an attorney from the Prisoners' Rights Office entered an appearance on Mullinnex's behalf in the civil case. Defendants then moved to dismiss the case as moot, indicating that Mullinnex had been prescribed MAT and began receiving it on November 7, 2018. The trial court declined to dismiss, instead directing Mullinnex to file an amended petition. Mullinnex accordingly filed an amended petition, this time through counsel, and joined as named plaintiffs John Jarvis, Shawn Gagnon, and Gregory Paradis, "on behalf of themselves and all others similarly situated." In the amended petition, Michael Touchette and "Centurion Healthcare" were named as defendants. The amended petition was accompanied by a motion to maintain a class action on behalf of all others similarly situated, alleging the existence of three questions of law and fact common to the putative class:

> (1) whether [d]efendants' MAT induction process meets prevailing medical standards of care as required by 28 V.S.A. §§ 801(a) [and] 801b, (2) whether [d]efendants' practice and policy of withdrawing treatment for and punishing prisoner-patients who relapse or continue to use meets prevailing medical standards of care, [and] (3) whether [d]efendants' practice and policy of denying MAT to prisoner-patients based on their legal status and without regard to their diagnosis meets prevailing medical standards of care.

---

[4] Menard was the DOC Commissioner at the time of Mullinnex's request.

¶ 6.    Defendants responded in opposition to both the amended petition and the motion to maintain a class action. In addition to arguing that venue was improper and the class-action requirements were unmet, defendants contended that none of the named plaintiffs had exhausted administrative remedies relative to their MAT complaints, divesting the court of subject-matter jurisdiction. In support of the alleged failure to exhaust, defendants offered an affidavit from David Turner, the Director of Policy Development and Offender Due Process at the DOC. Turner laid out the DOC's grievance procedure, describing multiple "levels of appeal . . . that ultimately reach the Commissioner," who "is the final arbiter of inmate grievances." Although he did not mention Mullinnex's grievances, Turner averred that none of the named plaintiffs had exhausted their grievance appeals with respect to the three questions identified in the amended petition.

¶ 7.    The court issued a decision in which it held that both venue and subject-matter jurisdiction were proper. With respect to the latter issue, the court did not hold an evidentiary hearing. Instead, it looked to the grievances filed by Mullinnex and concluded that he had exhausted his administrative remedies, noting that it found the "basis for his failure to exhaust as asserted by [d]efendant . . . unclear," but explaining that, "[t]o the extent the purported failure lies with the absence of a response or decision from the DOC administrators, the court would deem the DOC grievance procedure 'unavailable' to Plaintiff Mullinnex." Although it noted that Mullinnex appeared to have appealed to the Commissioner prior to the expiration of the twenty-day window provided under DOC rules for the Corrections Executive's response, the court found "this premature filing to be of little consequence in the absence of any response from DOC administrators." It then adopted the "vicarious exhaustion" doctrine favored in some federal jurisdictions, pursuant to which one prisoner-plaintiff's exhaustion satisfies the federal Prison Litigation Reform Act's (PLRA's) exhaustion requirement on behalf of an entire class. See, e.g. Chandler v. Crosby, 379 F.3d 1278, 1287 (11th Cir. 2004). On this basis, it held that the putative class had satisfied the exhaustion requirements through Mullinnex's efforts. It then noted that it

5

could not yet determine whether plaintiffs met the prerequisites for class certification and set the matter for oral argument. Following this hearing, the court issued another ruling on April 26, 2019, certifying the class as to issues with the MAT induction process and disciplinary actions taken against inmates who divert their MAT medication, but declining to certify the class as to the legal-status question. Defendants then brought this interlocutory appeal. Because the vicarious-exhaustion doctrine—whatever its merits outside the PLRA context—applies only where "one or more class members has exhausted his administrative remedies with respect to each claim raised by the class," we must first consider whether the trial court was correct in concluding that Mullinnex had done so. Id. (quotation omitted).

¶ 8.    "A trial court lacks subject matter jurisdiction to hear a case if a party fails to exhaust administrative remedies." Pratt v. Pallito, 2017 VT 22, ¶ 15, 204 Vt. 313, 167 A.3d 320. Therefore, in raising a challenge to Mullinnex's exhaustion, defendants in essence moved to dismiss this case below for want of subject-matter jurisdiction. "We review a trial court's denial of a motion to dismiss for lack of subject matter jurisdiction de novo, with all uncontroverted factual allegations of the complaint accepted as true and construed in the light most favorable to the nonmoving party." Conley v. Crisafulli, 2010 VT 38, ¶ 3, 188 Vt. 11, 99 A.2d 677 (quotation omitted). "A court may consider evidence outside the pleadings in resolving a motion to dismiss for lack of subject matter jurisdiction, and we review these factual findings for clear error." Id.

¶ 9.    However, plaintiffs contend that the court cannot now take up the issue of subject-matter jurisdiction because: (1) defendants did not timely appeal from the trial court's decision not to dismiss the case for lack of subject-matter jurisdiction; (2) pursuant to Rule 23(f), the only issue this Court may consider in relation to this interlocutory appeal is the merits of class certification; and (3) defendants bore the burden of showing failure to exhaust below, and did not do so.[5]

---

[5] Should we reach the question of subject-matter jurisdiction, plaintiffs urge us to affirm the trial court's decision to apply the vicarious-exhaustion doctrine on the basis of Mullinnex's

6

¶ 10. We find no merit in these arguments. It was incumbent on plaintiffs, in the first instance, to file a complaint "showing that the pleader is entitled to relief." V.R.C.P. 8(a). And, at the time of the vicarious-exhaustion ruling, the court had yet to certify the putative class. The vicarious-exhaustion doctrine applies only to certified classes. See McGoldrick v. Werholtz, 185 Fed.Appx 741, 743-44 (10th Cir. 2006) (assuming arguendo that circuit would follow vicarious exhaustion, it was unavailable to plaintiffs because class was not certified); Hattie v. Hallock, 8 F. Supp. 2d 685, 689 (N.D. Ohio 1998) (holding vicarious-exhaustion doctrine "only available to plaintiffs in a class-action lawsuit, where a class is certified pursuant to Fed.R.Civ.P. 23(b)(2)"). Therefore, until the court certified the class, its determination that the vicarious-exhaustion doctrine applies in Vermont was, in effect, conditioned on the court's subsequent decision on the motion for class certification. See, e.g., Armendariz v. Santa Fe Cty. Bd. of Comm'rs, No. 1:17-cv-00339-WJ-LF, 2019 WL 722629, at *54 (D. New Mexico, Feb. 20, 2019) (ruling that "[t]he Court shall apply the vicarious exhaustion rule in this case, but application of the rule is conditional on this Court granting class certification in this case" (emphasis omitted)). In other words, it was only upon certification of the class that the vicarious-exhaustion ruling took legal effect; had the court declined to certify the class, that language would have remained dicta.

¶ 11. Because the issues of exhaustion and class certification are thus inextricably intertwined, defendants' request for interlocutory appeal was not untimely. Furthermore, because the exhaustion ruling is bound up in the ruling on class certification, we conclude that it is appropriately considered in connection with an interlocutory appeal pursuant to Rule 23(f). And, in any event, issues of subject-matter jurisdiction are not subject to waiver. Rather, "[i]t is

grievances. Notably, plaintiffs do not argue that Jarvis, Gagnon, or Paradis—the other three named plaintiffs—have exhausted their administrative remedies, and there is no evidence of record to support such a contention.

axiomatic that lack of subject matter jurisdiction of the trial court may be raised for the first time on appeal to this Court." Town of Charlotte v. Richmond, 158 Vt. 354, 358, 609 A.2d 638, 640 (1992). As a result of our independent obligation to ensure that we act only in cases where we have subject-matter jurisdiction, we may consider such arguments on our own motion or at any time during the pendency of a proceeding; we do so now.

¶ 12. At the crux of the dispute over exhaustion is the significance of the fact that Mullinnex filed his claim in the trial court before the twenty-day periods afforded the corrections executive and the Commissioner to respond to his respective appeals had run, see DOC Grievance Rules § 5(e), and the grievance materials he submitted in connection with his superior court filing did not include evidence of any such responses. Defendants controverted Mullinnex's suggestion that he had exhausted his grievances by filing Turner's countervailing affidavit. See Conley, 2010 VT 38, ¶ 3 (noting that in reviewing ruling on dismissal for lack of subject-matter jurisdiction, only "uncontroverted factual allegations" are accepted as true). The trial court did not hold an evidentiary hearing to resolve this apparent conflict.[6] See, e.g., Baird v. City of Burlington, 2016 VT 6, ¶¶ 11, 13, 201 Vt. 112, 136 A.3d 223 (noting with respect to standing, lack of which deprives court of subject-matter jurisdiction, that "to avoid an unnecessary trial, courts may require plaintiffs to prove facts essential to support standing at a preliminary hearing"); N.A.A.C.P., Boston Chapter v. Harris, 607 F.2d 514, 526 n.15 (1st Cir. 1979) ("To avoid an unnecessary trial, the district court may conduct a preliminary evidentiary hearing on standing or other issues of justiciability." (emphasis added)). Taking all uncontroverted factual assertions as true, see Conley,

_____

[6] Below, plaintiffs argued that defendants were required to submit a motion to dismiss for lack of subject-matter jurisdiction, and that such filing would then trigger an evidentiary hearing. However, as set forth supra, ¶ 8, in arguing that plaintiffs had not exhausted their administrative grievances, defendants in essence moved to dismiss. This is so because, had the trial court found a failure to exhaust, the resulting lack of subject-matter jurisdiction would have compelled the trial court to dismiss.

8

2010 VT 38, ¶ 3, the record before us on appeal reveals that Mullinnex filed each of the grievance forms necessary to exhaust his remedies, but also suggests—as a result of the DOC's affidavit disputing exhaustion—that he failed to wait for either an agency response or expiration of the time in which the agency could respond before filing suit. See Murray v. City of Burlington, 2012 VT 11, ¶ 2, 191 Vt. 597, 44 A.3d 162 (mem.) (observing that, in reviewing ruling on motion to dismiss for lack of subject-matter jurisdiction, we "accept all reasonable inferences that may be drawn from [the] facts.").

¶ 13. To understand the bearing of this circumstance on our conclusions regarding exhaustion, we look to the policies and principles underlying the exhaustion requirement. We have previously explained that "[t]he term 'exhaustion' is used to describe both the judge-made common-law doctrine and a statutory direction that judicial review is available only if specified administrative procedures are first employed." Stone v. Errecart, 165 Vt. 1, 4, 675 A.2d 1322, 1325 (1996). Exhaustion is required pursuant to statutory direction where "specifically mandate[d]" by the Legislature. Id. But where the Legislature " 'has not clearly required exhaustion, sound judicial discretion governs.' " Id. (quoting McCarthy v. Madigan, 503 U.S. 140, 144 (1992), superseded by statute on other grounds, 42 U.S.C. § 1997e, as recognized in Woodford v. Viet Mike Ngo, 548 U.S. 81, 85 (2006)). Here, while the DOC rules require that inmates "exhaust administrative remedies provided by the Department of Corrections' grievance system before commencing litigation," the Legislature included no such requirement in the enabling statute. DOC Grievance Rules § 2(5)(g). However, we need not determine whether the legislative direction to establish grievance procedures constitutes a "specific mandate" of exhaustion because we conclude that the court abused its discretion in exempting Mullinnex from the exhaustion requirement under the common-law doctrine. Stone, 165 Vt. at 4, 675 A.2d at 1325; see also, e.g., Gilbeau v. Dep't of Corr. & Centurion Med. Servs., No. 2016-236, 2016 WL 7353065, at *2 (Vt. Dec. 1, 2016) (unpub. mem.), https://www.vermontjudiciary.org/sites

/default/files/documents/eo16-236.pdf [https://perma.cc/W2FB-73JG] ("Even if the legislative direction to establish prisoner grievance procedures does not constitute a specific mandate of exhaustion, the superior court acted well within its discretion in not exempting plaintiff from our longstanding and well-settled exhaustion rule.").

¶ 14.  "This court has consistently held," as a "long-settled rule of judicial administration," "that when administrative remedies are established by statute or regulation, a party must pursue, or 'exhaust,' all such remedies before turning to the courts for relief." Jordan v. State, 166 Vt. 509, 511-12, 702 A.2d 58, 60 (1997).  The rule "serves the dual purposes of protecting the authority of the administrative agency and promoting judicial efficiency."  Id. at 512, 702 A.2d at 60 (citing McCarthy, 503 U.S. at 145).  To allow complainants to bypass their administrative remedies deprives "the parties and the courts [of] the benefit of the administrative agency's experience and expertise," and denies "the agency the opportunity to cure its own errors." Pratt v. Pallito, 2017 VT 22, ¶ 14, 204 Vt. 313, 167 A.3d 320.  "Hence, we generally will not interfere with an agency's decisions regarding issues within its legislatively permitted jurisdiction unless and until all administrative remedies have been invoked."  Luck Bros., Inc. v. Agency of Transp., 2014 VT 59, ¶ 20, 196 Vt. 584, 99 A.3d 997 (quotation omitted).  "Indeed, exhaustion of administrative remedies is a presumed requirement, and the burden is on the party seeking to bypass the administrative process to show that it fits within an exception to this general rule."  Id.

¶ 15.  Here, the trial court found that Mullinnex had exhausted his administrative remedies because he "appear[ed] to have submitted the necessary forms to comply with the appeals process."  But compliance with the DOC's administrative-grievance procedures requires more than submission of each form in the appropriate sequence; rather, it necessitates filing the required forms and then waiting for either an agency response or the expiration of the time allotted for the same by rule.  The well-settled purposes underlying the common-law exhaustion requirement are not served by rote submission of documents, rapidly followed by an appeal before the agency has

10

occasion to respond. Rather, in order for the review process—and, ipso facto, the common-law exhaustion requirement—to have meaning, the agency must be afforded the opportunity to cure its own errors and to weigh in on the issues at stake, giving courts the benefit of the agency's expertise. See Pratt, 2017 VT 22, ¶ 14. Therefore, in order to bypass the exhaustion requirement, Mullinnex bore the burden of showing that his circumstances "fit[] within an exception to this general rule." Luck Bros., Inc., 2014 VT 59, ¶ 20. The trial court specifically considered two such exceptions, unavailability and substantial compliance. For the reasons set forth below, we conclude that—on the limited record before the trial court—Mullinnex failed to show either exception is appropriately applied here.

¶ 16. With respect to unavailability, the trial court noted that, "[t]o the extent the purported failure to exhaust lies with the absence of a response or decision from the DOC administrators, the court would deem the DOC grievance procedure 'unavailable' to . . . Mullinnex." In support of this conclusion, the court cited the report and recommendation of a federal magistrate judge in Morales v. Burke, No. 5:17-cv-124-gwc-jmc, 2019 WL 277591, at *4 (D. Vt. Jan. 22, 2019), adopted by Morales v. Newton, No. 5:17-cv-124, 2019 WL 2996434, at *1 (D. Vt. Jul. 9, 2019). However, as the trial court itself observed, in Morales, summary judgment for institutional defendants was unwarranted because a "question of fact existed as to [the] prisoner's failure to exhaust where she had filed forms in accordance with the DOC grievance procedure, waited the requisite amount of time under Directive 320.01, and DOC administrators neither responded to the grievances, nor signed, dated and timed the grievance forms as required by same." (Emphasis added.) Indeed, in support of this conclusion, the federal magistrate judge observed that

> courts in the Second Circuit have generally agreed with the
> proposition that administrative remedies may be deemed
> unavailable when the prison fails to timely respond to a grievance.
> This conclusion makes sense because a prisoner who has complied
> with all of the administrative requirements and made a good-faith

> effort to exhaust should not be denied the opportunity to pursue his [or her] grievance in federal court simply because administrative decision makers have failed to respond to the grievance.

Id. (alterations, citations, and quotations omitted). This rationale is plainly inapplicable here because Mullinnex neither sought to invoke the expedited timeline applicable to emergency grievances nor waited for the requisite amount of time for DOC response to nonemergency grievances under Directive 320.01 to elapse before seeking relief in court. See Vermont Department of Corrections Directive 320.01, Offender Grievance System for Field and Facilities, https://doc.vermont.gov/sites/correct/files/documents/policy/correctional/320.01-Offender-Grievance-System-for-Field-and-Facilities.pdf [https://perma.cc/Y46Q-BANS]. Rather, the record demonstrates that Mullinnex filed his civil case on the same day as his appeal to the Commissioner. To show unavailability, Mullinnex needed to establish a lack of agency response, which is not apparent on the record before us.

¶ 17. The trial court also made note of a superior court decision declining to dismiss on exhaustion grounds where a prisoner-plaintiff complied "substantially," but not "strictly," with the DOC's grievance rules. See Davis v. Marcoux, No. 10-1-16 Cncv, 2016 WL 9453672, at *2 (Vt. Super. Ct. Dec. 29, 2016), https://www.vermontjudiciary.org/sites/default/files/documents/2017-6-27-1.pdf [https://perma.cc/4G3F-9G4S] (finding plaintiff "did not strictly comply with DOC's grievance regulations" because he did not wait until the corrections executive issued a decision before appealing to the Commissioner, and did not wait until the Commissioner issued a decision before filing a Rule 75 complaint in civil court, but declining to dismiss the complaint for failure to exhaust because plaintiff "substantially complied with the grievance process"). Neither the trial court here nor the trial court in Davis offered further case law supporting this conclusion, which we find unpersuasive. "The exhaustion doctrine is designed to ensure that a grievance is fully explored and litigated before the administrative body possessing the pertinent experience and expertise in the subject area; the doctrine thus serves to preserve the authority of the administrative

body, and to promote judicial efficiency." Rennie v. State, 171 Vt. 584, 585, 762 A.2d 1272, 1275 (2000) (mem.) (affirming dismissal for failure to exhaust where plaintiff's efforts "did not satisfy the prerequisites, or the purposes, of the exhaustion doctrine"). It benefits neither plaintiffs, defendants, nor the law for courts to consider an issue without benefit of its full development before the relevant agency. See McCarthy, 503 U.S. at 145 ("Exhaustion concerns apply with particular force . . . when the agency proceedings in question allow the agency to apply its special expertise."). Whatever may constitute "substantial compliance," it is not manifested through the procedural course followed by Mullinnex here.

¶ 18. For these reasons, the trial court abused its discretion in determining, on the record before it, that Mullinnex exhausted his administrative remedies. As a result, the threshold requirement of the vicarious-exhaustion doctrine—exhaustion by at least one member of the class—is unmet. Therefore, the question of whether the doctrine is appropriately applied in this jurisdiction is not properly before us. And because we determine that the courts are thus without subject-matter jurisdiction, we do not reach defendants' challenges to the merits of the trial court's class certification.[7]

Reversed.

FOR THE COURT:

_____
Associate Justice

---

[7] However, we note that plaintiffs may also seek relief in the nature of declaratory judgment, which allows a party to seek judicial determination of "[t]he validity or applicability of a rule," and "may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question." 3 V.S.A. § 807.