Filed 04/03/25

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-04712

| H. Paige v. State of Vermont et al |
|---|

## Opinion and Order on the State's Motion to Dismiss

Plaintiff Mr. H. Brooke Paige brought this case challenging several features of Vermont election law included in legislation from 2021 (Act 60) ("An act relating to mailing out ballots, correcting defective ballots, and miscellaneous changes to State election laws.").[1]  The State has filed a motion seeking dismissal for failure to state a claim because the allegations are not sufficient to make out a claim under 17 V.S.A. § 2603 and because of lack of subject matter jurisdiction due to Mr. Paige's lack of standing to bring his claims.

### I. Procedural Standards

As the Vermont Supreme Court has described, when considering a motion to dismiss for lack of subject matter jurisdiction under Vt. R. Civ. P. 12(b)(1), "'all uncontroverted factual allegations of the complaint [are] accepted as true and construed in the light most favorable to the nonmoving party.'  'A court may consider evidence outside the pleadings.'"  *Mullinnex v. Menard*, 2020 VT 33, ¶ 8, 212 Vt. 432, 438–39

---

[1] This is not Mr. Paige's first attempt at challenging parts of Act 60.  *See, e.g., Paige v. State*, 2024 VT 7; *Paige v. State of Vermont*, No. 22-CV-4124, 2023 WL 7309318 (Vt. Super. Ct. July 14, 2023) and 2023 WL 7309327 (Vt. Super. Ct. May 09, 2023); *Paige v. State of Vermont*, No. 22-CV-04124, *Paige v. Condos*, No. 22-CV-02582, 2022 WL 21461998 (Vt. Super. Ct. Oct. 07, 2022) (all decisions denying relief for lack of standing or for failure to state a claim).

Order
24-CV-04712 H. Paige v. State of Vermont et al

(citations omitted); *see also Conley v. Crisafulli*, 2010 VT 38, ¶ 3, 188 Vt. 11, 14 (court

may accept evidence from outside the record to resolve dispute as to jurisdiction).

A motion to dismiss for failure to state a claim under Vt. R. Civ. P. 12(b)(6) faces a

high bar. The Vermont Supreme Court has described the familiar standard for such

motions as follows:

> "A motion to dismiss . . . is not favored and rarely granted." This is
> especially true "when the asserted theory of liability is novel or extreme," as
> such cases "should be explored in the light of facts as developed by the
> evidence, and, generally, not dismissed before trial because of the mere
> novelty of the allegations." In reviewing a motion to dismiss, we consider
> whether, taking all of the nonmoving party's factual allegations as true, "'it
> appears beyond doubt' that there exist no facts or circumstances that would
> entitle the plaintiff to relief." We treat all reasonable inferences from the
> complaint as true, and we assume that the movant's contravening
> assertions are false.

*Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309, 316–17 (citations

omitted); *see also* 5B A. Benjamin Spencer, *et al., Fed. Prac. & Proc. Civ.* § 1357 (4th ed.)

("Ultimately, the burden is on the moving party to prove that no legally cognizable claim

for relief exists."). The record for Rule 12(b)(6) purposes generally, though, is limited to

the four corners of the complaint and any attachments to it. *See Nash v. Coxon*, 152 Vt.

313, 314–15 (1989).[2]

---

[2] The Supreme Court has sometimes suggested that the standards for dismissal under
Rules 12(b)(1) and (6) are both evaluated on the question of whether "it appears beyond
doubt that there exist no facts or circumstances that would entitle the plaintiff to relief."
*Wool v. Off. of Pro. Regul.*, 2020 VT 44, ¶ 13, 212 Vt. 305 (internal quotation omitted). As
the Court sometimes must weigh and assess facts in the context of assessing jurisdiction,
the Court is not convinced of the accuracy of that approach. Nonetheless, even following
that direction in this case leads to the same result.

## II. Background

The complaint is pled in a confusing manner, includes inappropriate argumentation and long quotations of legislation, and is 36 pages in length. It is not "a short and plain statement of the claim showing that the pleader is entitled to relief."[3] Vt. R. Civ. P. 8(a). It is clear, however, that Mr. Paige cares deeply about election integrity issues, and he perceives that certain provisions of Vermont election law introduced into Vermont election law by Act 60, or the absence of certain provisions he thinks should have been included, weaken confidence in Vermont's election processes, invite suspicion, and fail to safeguard against fraud to the extent advisable. He points throughout the complaint to numerous such issues, summarily pronounces them violations of the Constitution, and describes his recommendations for improvements. He refers, apparently by way of example, to the 2024 election cycle, but he expressly says that he *is not* asking the Court to grant any relief as to the outcomes of those elections. *See* Complaint ¶¶ 19, 45 (filed Nov. 19, 2024); Opposition to Dismissal at 1 (filed Feb. 5, 2025) (Mr. Paige "does not ask the Court to overturn the November 2024 election results."). Rather, he seeks declaratory relief and envisions an order compelling the Secretary of State or the Legislature to remedy the ostensible constitutional violations by recrafting Vermont election law.

Mr. Paige describes the legal basis for his suit as follows:

> This complaint is filed pursuant to: 17 V.S.A. §2603 (Contests of Elections), 17 V.S.A. § 2617 (Jurisdiction of Superior Courts), 12 V.S.A. §4711 (Declaratory judgment), V.R.C.P. 57 (Declaratory Judgments) Vermont Constitution: Chapter I, Article 4. (Remedy at law secured to all), Chapter I, Article 7. (Common Benefit Clause), Chapter 1, Article 8 (Purity

---

[3] Mr. Paige is *pro se.* The Court does its best to construe the complaint so "as to do substantial justice." Vt. R. Civ. P. 8(f).

of Elections), Chapter I, Article 18. (Regard to fundamental principles and virtues necessary to preserve liberty), Chapter II, § 71 (Declaration of Rights Not to be Violated).

Complaint at 1.

Mr. Paige notes that he is a Vermont citizen and registered voter, justice of the peace, member of his town's board of civil authority, chair of his town's Republican Committee, treasurer of the Orange County Republican Committee, a delegate to the Vermont State Republican Committee, and a member of the Vermont Republican Committee on Election Integrity. He further alleges that in the 2024 election cycle he was a candidate for secretary of state, auditor of accounts, and justice of the peace; and that he voted in the 2024 general election. Complaint ¶ 1.

### III. Motion to Dismiss for Failure to State a Claim[4]

The State argues that the complaint should be dismissed for failure to state a claim under Vt. R. Civ. P. 12(b)(6) for the same reasons that his prior complaint was in *Paige v. State*, 2024 VT 7, that is, that the allegations are insufficient under 17 V.S.A. § 2603 to effectively assert an election contest. The 2024 *Paige* decision addressed

---

[4] Standing is part of the Court's subject matter jurisdiction and generally must be resolved before addressing the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (*quoting Ex Parte McCardle*, 7 Wall. 506, 514 (1868)). Nevertheless, the Vermont Supreme Court sometimes does so. *See Ferry v. City of Montpelier*, 2023 VT 4, ¶ 10, 217 Vt. 450, 459 ("We observe that at least twice in the past, this Court has addressed the merits in some form without first establishing that the plaintiffs had standing."). It also went straight to the merits, even though the trial court had dismissed on standing grounds, in *Paige v. State*, 2024 VT 7 (denying Mr. Paige's appeal for failure to state a claim under Rule 12(b)(6) without addressing subject matter jurisdiction). Because the Supreme Court's 2024 *Paige* decision is on all fours with this case insofar as 17 V.S.A. § 2603 goes, the Court will address the merits prior to addressing subject matter jurisdiction.

numerous challenges to Act 60 of the same character as those he advances here. It explained that Mr. Paige's allegations were insufficient to assert an election contest under § 2603. The decision concludes with this:

> Without allegations pertaining to the result of a particular election, plaintiff fails to state a claim under § 2603 because, as pleaded, his complaint does not come close to approaching the kind of extreme situation we have identified as providing a potential basis to overturn an election result. While some of plaintiff's contentions may, when considered in light of the requirement to resolve all reasonable inferences in his favor, relate to potential "harm to the organic processes of the election," to prevail he must nevertheless have some specific basis in hand for why a particular election result should be set aside. And that basis must be, at a minimum, expressible in concrete terms of votes cast, collected, and/or tallied if the claim is brought under § 2603. Plaintiff has not pleaded these allegations and therefore his complaint cannot survive dismissal under Vermont Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

*Paige v. State*, 2024 VT 7, ¶ 12 (citation omitted). This is all the more so the case here. In this case, Mr. Paige *expressly* disclaims any interest in contesting the outcome of any vote in 2024. He implicitly acknowledges that, while he cites 17 V.S.A. § 2603 and purports to rely on it, he, in fact, is not attempting in this case to actually bring a § 2603 election contest.[5]

The State's motion is granted insofar as the complaint may be properly characterized as bringing a 17 V.S.A. § 2603 election contest.

---

[5] To the extent that Mr. Paige really does intend to bring a 17 V.S.A. § 2603 election contest while at the same time disclaiming any request for relief that a Court might order under that statute, the Court would not address it. That would amount to a request for an advisory opinion in violation of the constitutional interest in the separation of powers. *See In re Opinion of the Justs.,* 115 Vt. 524, 529 (1949) ("Organically, courts are not instituted to render advisory opinions.").

Mr. Paige fairs no better under 17 V.S.A. § 2617, which he also cites. That provision merely says: "In all cases for which no other provision has been made, the Superior Court shall have general jurisdiction to hear and determine matters relating to elections and to fashion appropriate relief." That statute is likely best interpreted to apply to the conduct and outcome of specific elections, about which Mr. Paige has disclaimed any interest. Moreover, it merely indicates that jurisdiction rests with the Civil Division; it does not purport to create a cause of action.[6]

IV.     Motion to Dismiss for Lack of Standing

The ruling above does not end this case, however; because Mr. Paige, apart from any election contest under 17 V.S.A. § 2603, more generally seeks declaratory and injunctive relief as to the asserted constitutional violations. The State argues that Mr. Paige lacks standing to bring these claims.

The Vermont Supreme Court recently summarized standing law in a case presenting a constitutional challenge to Vermont election law as follows:

> Vermont courts' subject-matter jurisdiction is limited to "actual cases or controversies." Standing is one of several prerequisites to satisfy the case-or-controversy requirement. It is thus "fundamentally rooted in respect for the separation of powers of the independent branches of government." "The gist of the question of standing is whether [the] plaintiff's stake in the outcome of the controversy is sufficient to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."

> This Court adopted a three-part test for standing originally articulated for federal courts: (1) injury in fact; (2) causation; and (3) redressability. In other words, to have standing, a plaintiff must "have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law." These requirements apply equally to petitions for declaratory judgment.

---

[6] Nor does it purport to create standing where it otherwise would not exist.

The first and foremost requirement, injury in fact, depends on the nature of the right allegedly intruded upon. Injury in fact is "the invasion of a legally protected interest." Standing is a substantive issue separate from the merits of a plaintiff's case; however, they are "closely related." For this reason, standing is "gauged by the specific common-law, statutory or constitutional claims that a party presents." Thus, "[a]lthough standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal," the question of whether the plaintiff has standing "often turns on the nature and source of the claim asserted." "[A] party who is not injured has no standing to bring suit."

*Ferry v. City of Montpelier*, 2023 VT 4, ¶¶ 11–13, 217 Vt. 450, 459–61 (citations and footnote omitted); *see also* 13A Edward H. Cooper, *et al., Fed. Prac. & Proc. Juris.* § 3531.2 (3d ed.) ("The injury requirement tends to assure that legal questions will be presented 'in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'").

"To allege a particularized injury, a plaintiff must show that a defendant's actions have harmed the plaintiff in a personal way, not in a generalized way that equally affects everyone else. To allege a concrete injury, a plaintiff must establish that the injury is 'real and not abstract,' an element that considers whether the plaintiff has asserted a type of injury traditionally redressed by the courts." *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021) (citation omitted). The plaintiff has the burden of alleging facts that demonstrate standing on the face of the complaint. *Paige v. State*, 2018 VT 136, ¶ 10, 209 Vt. 379, 384 (citation omitted). And, standing must exist as to each form of relief sought and each claim asserted. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (as to each form of relief sought); *DaimlerChrysler Corp. v. Duno*, 547 U.S. 332, 352 (2006) (as to each claim asserted).

Despite the extraordinary length of Mr. Paige's complaint, it does little to explicate his claims. The principal focus appears to be four aspects of election law that were adopted in Act 60:

> With those concerns in mind, the Plaintiff directs the Court's attention to four specific changes made by the Legislature enacted in Act 60 (S015) of 2021 - 1) 17 V.S.A. § 2537a. - MAILING OF GENERAL ELECTION BALLOTS, 2) 17 V.S.A. § 2543. - RETURN OF BALLOTS (d) - (g), 3), 17 V.S.A. § 2543a. - PROVISION OF SECURE BALLOT DROP BOXES, 4) 17 V.S.A. § 2547. DEFECTIVE BALLOTS that undermine the security and trust in the Election process. In combination, the changes made by the Legislature through Act 60 of 2022 serve to weaken the confidence Vermont voters in the Vermont Election Process [*sic*]. Confidence in an Election Process that promotes confidence in the process and election officials promotes greater participation. Uncertainty and doubt over the process or the officials conducting the election, especially those without constitutional authority, discourages participation.

Complaint at ¶ 28 (filed Nov. 19, 2024). These appear to be objections related to election procedures that Act 60 embraced or failed to adopt, including aspects of universal voting by mail, vote harvesting (third parties returning other persons' ballots), the use of ballot collection boxes, and vote curing (how a voter may cure a defectively or mistakenly cast ballot).

He summarily asserts that these provisions or the lack of safeguards around them violate the Vermont Constitution. He variously cites at least the following: Vermont Constitution ch. I, art. 4 (Remedy at law secured to all), 7 (Government for the people; they may change it), 8 (Elections to be free and pure; rights of voters therein), 18 (Regard to fundamental principles and virtues necessary to preserve liberty), and ch. II, art. 6 (Legislative powers), 43 (Biennial elections), 44 (Election of representatives and senators), 47 (Election of governor, lieutenant-governor and treasurer), and 48 (Election of secretary of state and auditor of accounts).

The State asserts that the complaint fails to include allegations demonstrably showing that Mr. Paige is currently suffering or imminently will suffer any injury for standing purposes. As noted, an alleged injury must be concrete and particularized and actual or imminent rather than conjectural or hypothetical.

The Court is unable to identify any particularized injury in the complaint, much less one that is happening or imminently will. The closest the complaint comes is as follows:

> 4. . . . . These changes work to advantage of incumbent candidates like Secretary Hanzas and disadvantage challenger like the Plaintiff.

> 46. . . . . [T]his lack of confidence in the election process dissuaded conservative voters, in 2024, from participating working to the disadvantage of statewide candidates like the Plaintiff.

Complaint ¶¶ 4, 46. These allegations are wholly insufficient to describe an injury for standing purposes.

To the extent that Mr. Paige is referring in these allegations to what transpired in the 2024 election, at most he could be describing an injury that occurred in the past. The 2024 election over. For standing purposes, he must be suffering an injury now or that injury must be imminent. Declaratory and injunctive relief would do Mr. Paige no good in relation to a past injury. He does not allege that he is currently a candidate for any relevant office or that he will be so in the future.

More importantly, even if he had alleged that he will be a candidate in future races, the allegations in the complaint are inappropriately conclusory and speculative in the extreme. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) ("Neither conclusory assertions nor unfounded speculation can supply the necessary heft [for pleading an injury for standing purposes]."); *Brod v. Agency of Nat. Res.*, 2007 VT 87,

¶ 12, 182 Vt. 234, 240 (2007) ("speculative injury" is insufficient). While the analysis of standing is subject to the procedural posture of the case, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), even Vermont's liberal Rule 12(b)(6) standard does not tolerate such conclusory allegations of fact. *See Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1, 9 (noting that "courts not required to accept as true '[c]onclusory allegations or legal conclusions masquerading as factual conclusions' in 12(b)(6) analysis") (citation omitted)).

It is unnecessary to analyze standing further. Mr. Paige has failed to allege nonconclusory facts describing an injury for standing purposes. That he cares so deeply about election integrity and may have good (or even better) ideas for how to improve Vermont election laws is insufficient to demonstrate standing, and makes him no more competent to advance his claims than any other member of the public. Those concerns are more appropriately addressed to and by the Legislature.

Mr. Paige dismisses justiciability doctrines, including standing, as mere technical issues thrust at him to deter his litigation efforts. *See* Informational Brief at 1 (filed Mar. 21, 2025) ("The Vermont Courts repeatedly have refused to reach the issues, relying on the technical issues of mootness, standing, jurisdiction and political question advanced by the Attorney General to sully the Plaintiff's efforts."). Justiciability principles are not about gamesmanship, however. They are key mechanisms by which the judiciary moderates the separation of powers among the branches and advances the rule of law. As Chief Justice Reiber recently remarked:

> Principles of separation of powers and checks and balances . . . necessarily contemplate the interrelated role of each branch and the structured conflicts that the Vermont Constitution establishes: executive action is balanced by the oversight of the representative Legislature; the Legislature's ability to

pass laws is inextricably bound to the Governor; and the judiciary is constrained by both other departments, as well as by self-imposed limits of justiciability. Checks and balances are vital to maintaining a government that is fair, effective, and deliberate.

*McCormack v. Scott*, 2025 VT 7, ¶ 29, 2025 WL 496005 (Reiber, C.J., concurring). A litigant suing the government without standing is asking for relief the judiciary cannot– and should not–give.

<u>Conclusion</u>

For the foregoing reasons, the State's motion to dismiss is granted both for failure to state a claim and for lack of subject matter jurisdiction.

Electronically signed on Friday, March 28, 2025, per V.R.E.F. 9(d).

Timothy B. Tomasi
Superior Court Judge